Argued and submitted November 9, 1998, decision of the Court of Appeals and
judgment of the circuit court affirmed March 8, 2001

# OUTDOOR MEDIA DIMENSIONS INCORPORATED,
an Oregon corporation,
*Petitioner on Review,*

*v.*

# STATE OF OREGON,
Jimmy L. Odom, Julie Evey, and Henry Montes,
*Respondents on Review.*

(94-3953-L2; CA A91779; SC S44590)

20 P3d 180

Alan R. Herson, Jacksonville, argued the cause and submitted the briefs and memoranda for petitioner on review.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

James E. Mountain Jr., Salem, and Donald Joe Willis, Portland, filed the briefs for *amicus curiae* Oregon Outdoor Advertising Association.

G. Kenneth Shiroishi, Portland, filed the brief for *amicus curiae* American Civil Liberties Union Foundation of Oregon.

Madelyn Wessel, Portland, filed the briefs for *amicus curiae* City of Portland.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

RIGGS, J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. Kulongoski and De Muniz, JJ., did not participate in the consideration or decision of this case.

**RIGGS, J.**

Outdoor Media Dimensions Inc. (plaintiff) brought this civil action that, among other things, challenges the constitutionality of the Oregon Motorist Information Act (OMIA). ORS 377.700 to ORS 377.840; ORS 377.992. Plaintiff contends that the OMIA, which regulates signs along Oregon highways, violates the free speech provisions of both the state and federal constitutions. The trial court disagreed and granted summary judgment to defendants, the State of Oregon and three of its employees (collectively "the state"). The Court of Appeals affirmed. *Outdoor Media Dimensions Inc. v. State of Oregon*, 150 Or App 106, 945 P2d 614 (1997). This court allowed review, primarily to address plaintiff's arguments under the Oregon Constitution. As discussed below, however, we are unable to reach those arguments in this case. For the reasons that follow, we affirm the decision of the Court of Appeals and the judgment of the trial court.

## I.  BACKGROUND

The legislature enacted the OMIA in 1971. Or Laws 1971, ch 770. The OMIA was Oregon's effort to comply with the federal Highway Beautification Act of 1965 (HBA), 23 USC § 131. The HBA established federal standards for erecting and maintaining outdoor advertising signs, displays, and devices along interstate and federally aided primary highways. *See* 23 USC § 131(a) (stating purposes of HBA). The HBA requires that, unless a state provides "effective control" of outdoor advertising signs, the state will lose 10 percent of its federal highway funds. 23 USC § 131(b), (c). "Effective control" essentially requires states to prohibit all outdoor advertising signs that are visible from an interstate or primary highway, unless a particular sign meets one of five statutory exceptions or is located in an industrial or commercial zone. *See* 23 USC § 131(c), (d) (setting out that prohibition and listing exceptions).[1]

---

[1] For discussions of the history and provisions of the HBA, see James Lynch, *The Federal Highway Beautification Act after Metromedia*, 35 Emory L J 419, 425-33 (1986), and Roger A. Cunningham, *Billboard Control Under the Highway Beautification Act of 1965*, 71 Mich L Rev 1296, 1296-1326 (1973).

The OMIA generally prohibits erecting or maintaining most signs visible to the traveling public from a state highway, unless the sign complies with the provisions of the OMIA, rules adopted under the OMIA, and any federal require-[f]ments. ORS 377.715 (1991).[2] As relevant to this case, the OMIA prohibits all but certain pre-existing "outdoor advertising signs," ORS 377.725, and restricts the placement of those signs, *id.*; ORS 377.765(1). An "[o]utdoor advertising sign" is one that advertises: (1) "[g]oods, products or services which are not sold, manufactured or distributed on or from the premises on which the sign is located," ORS 377.710(24)(a); or (2) "[f]acilities not located on the premises on which the sign is located," ORS 377.710(24)(b). The exception to the OMIA's general prohibition against outdoor advertising signs applies to outdoor advertising signs that existed before June 12, 1975, in commercial or industrial zones. The OMIA permits the owners of such signs to obtain permits allowing those signs to remain. ORS 377.712; ORS 377.725. With certain limits and upon written notice, the owner of an outdoor advertising sign that meets the above criteria may transfer the permit for that sign to another sign owner. ORS 377.725(2).

## II. FACTS

As noted, the trial court resolved this case on summary judgment. Accordingly, we view the facts and all reasonable inferences that may be drawn from the facts in favor of plaintiff, the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. A genuine issue of material fact is lacking when "no objectively reasonable juror could return a

---

[2] After this case was submitted, the 1999 Legislature amended the OMIA in several respects. Or Laws 1999, ch 877. Those amendments do not affect in any substantive way the analysis of the issues that we address on review. Also, the conduct at issue in this case occurred between November 1992 and February 1995. Although the 1993 Legislature amended the 1991 version of the OMIA, those amendments are not relevant to the claims or defenses of the parties. Accordingly, for ease of reference, we cite and refer to the OMIA as it appeared in the 1991 version of the Oregon Revised Statutes.

verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.*

Plaintiff is an outdoor advertising company that owned a billboard along Route 62 in Jackson County. Plaintiff did not have a permit for the billboard. Plaintiff placed a religious message on one side of the billboard and a radio station advertisement on the other. In February 1993, the state notified plaintiff by letter that the billboard violated the OMIA:

> "This is to notify you that the referenced sign, visible to a state highway, is in violation of the Oregon Motorist Information Act. The sign violates Oregon Revised Statute (ORS) 377.725, installed without permit authority. The sign advertises an activity which is not at the location of the sign and is, therefore, an off-premise sign. Oregon Law, pursuant to the Federal Highway Beautification Act, has prohibited the erection of new off-premise advertising signs visible to state highways since June 12, 1975. The sign must be removed or corrected **within 30 days from the date of this notice**.

> "\* \* \* \* \*

> "Enclosed is a copy of the ORS Section of the law under which this determination was made. If you feel your sign is not in violation of the law, you may request a hearing before the Highway Engineer (**within 30 days from the date of this notice**) \* \* \* [t]o present your arguments.

> "If you fail to respond, or if the sign is not removed or corrected as provided in this notice, it becomes subject to removal by the Highway Division \* \* \*."

(Boldface and underscoring in original.)

Following receipt of the notice, plaintiff advised the state of its intention to apply for a relocation permit for the billboard. An employee of the state told plaintiff that, because plaintiff had expressed an intention to apply for a relocation permit, the notice was moot and plaintiff should not seek a hearing. In reliance on that statement, plaintiff did not request a hearing and, instead, attempted to obtain a relocation permit. That attempt failed.

At some point thereafter, the state informed plaintiff that, if plaintiff removed all speech from the billboard, then the state would not remove the billboard. In April 1994, in reliance on that statement, plaintiff removed the religious message and the radio advertisement from the billboard, leaving the structure empty. Nevertheless, in September 1994, the state removed the billboard. Plaintiff filed this action shortly thereafter.

Plaintiff initially asserted two claims for relief: conversion and a claim under 42 USC § 1983 (1994).[3] Shortly after filing its complaint, plaintiff filed an amended complaint, adding a third claim for relief for a declaratory judgment and for an injunction. Plaintiff's third claim pertained to a second billboard, located along Interstate 5 near Ashland. Plaintiff had placed an advertisement on that billboard for stores that were located off the premises of the sign. As with the first billboard, the state sent plaintiff a notice that the second billboard violated the OMIA.

With respect to that billboard, however, and unlike plaintiff's course of conduct as to the first billboard, plaintiff requested an administrative hearing. Plaintiff did not prevail at that hearing, removed the advertisement from the billboard, and replaced the advertisement with a religious message. The state did not notify plaintiff to remove that message. Plaintiff nevertheless later removed the message. In its amended complaint, plaintiff alleged an intention to have the billboard advertise an activity that was located off the premises of the sign. Based in part on that alleged intention, plaintiff sought a declaration that the OMIA violates both the Oregon and United States Constitutions, and an injunction prohibiting the state from removing from the second billboard any advertisement of an activity conducted off the premises.

---

[3] 42 USC § 1983 (1994) provided, in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ In its answer, the state raised various affirmative defenses. Included among those was the claim that plaintiff had failed to exhaust its administrative remedies and, therefore, was barred from bringing its first and third claims for relief.[4] After the state filed its answer, plaintiff moved for summary judgment on its third claim for relief. Plaintiff argued that the OMIA, on its face, was invalid under both the Oregon and United States Constitutions and, therefore, as a matter of law, plaintiff was entitled to the declaratory judgment and injunction that it sought. The state filed a cross-motion for summary judgment, asserting that the OMIA was facially valid. The trial court granted the state's cross-motion.

Plaintiff then filed a second amended complaint. With respect to the conversion claim, the second amended complaint added a new allegation, *viz.*, that the state had permitted plaintiff to retake possession of the first billboard, but had demanded that plaintiff pay the state $962.50 for the cost of removing that billboard. Plaintiff claimed $90,000 in damages based on the alleged conversion and, in addition, requested a declaration from the trial court that plaintiff was not indebted to the state for the removal costs. Plaintiff also claimed that amount of damages with respect to its section 1983 claim.

With respect to plaintiff's claim for declaratory and injunctive relief, the second amended complaint added allegations concerning a third billboard. Plaintiff added those allegations because, during the intervening period, plaintiff had lost its right to place advertisements or other signs on the second billboard. Plaintiff was concerned that, without the amendment, the court would deem that claim moot. Plaintiff alleged that it had received permission from the owner of a property located near Route 62 in Medford to place a billboard on that property. Plaintiff further alleged that it had erected the billboard and had placed an advertisement on the billboard for an alarm system sold by a local company.

---

[4] Exhaustion generally is not a defense to a section 1983 action, which plaintiff alleged as its second claim for relief. *See Nutbrown v. Munn*, 311 Or 328, 338, 811 P2d 131 (1991) ("A state generally may not erect procedural barriers such as requiring that state remedies be sought and denied, before the federal remedy is invoked.").

As before, the state had sent plaintiff a notice that the billboard violated the OMIA. Plaintiff asked the trial court to enjoin the state from ordering plaintiff to remove "speech" from the third billboard.

The state filed a second motion for summary judgment that asserted various arguments and, later, a supplemental motion based on the theory of claim preclusion—an argument that it asserted separately from its affirmative defense of failure to exhaust administrative remedies. In the state's view, because plaintiff had had the opportunity to request an administrative hearing, but had failed to do so, plaintiff was precluded from litigating any of its claims in court. Plaintiff opposed the supplemental motion on various grounds, including that the state was estopped from raising any claim preclusion argument because the state had instructed plaintiff not to file a request for a hearing in light of plaintiff's intention to seek a relocation permit for the first billboard. The trial court granted the state's motion for summary judgment. The order states that plaintiff had acknowledged during oral argument that it timely had requested an administrative hearing concerning the third billboard.

As noted, the Court of Appeals affirmed, rejecting each of plaintiff's arguments. This court granted plaintiff's petition for review.

## III.   ANALYSIS

### A.   *First Claim for Relief—Conversion*

#### 1.   *The Legal Theory of Plaintiff's Conversion Claim*

■      Plaintiff alleged that the state had removed the first billboard "without right or justification." In moving for summary judgment against plaintiff's conversion claim, the state asserted, in part:

> "Plaintiff may argue that the cited statute is invalid for various constitutional reasons, but that is not the issue presented by the first claim for relief, which is pled as a claim for conversion, nothing more."

To that assertion, plaintiff responded:

> "Defendants allege that constitutional reasons are not presented in the First Claim for Relief, * * * but this is not

true. [The second amended complaint] alleges that the State's actions were without right or justification. One reason that the State had no right or justification is that the statute relied upon is void."

On appeal, the state continued to characterize plaintiff's conversion claim as one that "sounds in tort." The state limited its briefing on that claim to whether the state had complied with the procedural requirements of the OMIA in removing the first billboard. When the issue of the theory of plaintiff's first claim for relief arose at oral argument at the Court of Appeals, the state asserted that that claim was not predicated on any constitutional arguments.

The Court of Appeals agreed:

"[P]laintiff's constitutional challenges to the OMIA itself are confined to its second and third claims—that is, plaintiff does not contend that the [state] effected a conversion because the provisions of the OMIA on which it relied are unconstitutional."

*Outdoor Media Dimensions*, 150 Or App at 112. In its petition for review and merits brief in this court, plaintiff continues to assert that its conversion claim rests in part on the argument that the state's action constituted a conversion because the state relied on an unconstitutional statute. For the reasons that follow, we disagree.

First, there is nothing in the way that plaintiff pleaded its conversion claim that informed either the state or the trial court that plaintiff's theory of conversion rested on an assertion that the OMIA is unconstitutional. Second, even if plaintiff's theory of conversion in the trial court included a constitutional component, plaintiff failed to provide the Court of Appeals with any argument on that subject with respect to the assignments of error that pertained to plaintiff's first claim for relief.[5] Accordingly, the Court of Appeals

---

[5] In reaching that conclusion, we note that plaintiff listed in the introductory portion of its appellant's brief in the Court of Appeals a number of questions—including questions that pertained to the constitutionality of the OMIA—as applying "to all claims for relief." Because plaintiff subsequently failed to present argument with respect to those questions as they pertained to plaintiff's conversion claim, that reference presented nothing for the Court of Appeals to review. *See* ORAP 5.45 (setting out requirement of and specifications for assignments of error and arguments thereon).

did not err in determining that plaintiff had confined its constitutional challenges to the OMIA to plaintiff's second and third claims for relief. We proceed to consider whether there is any triable issue respecting whether the state complied with the OMIA in removing plaintiff's first billboard.

## 2. *Whether the State Complied With the OMIA*

As pertinent to plaintiff's conversion claim, the OMIA provides:

> "*Any* outdoor advertising sign which does not have copy on the display surface for a period of six months shall be deemed to have been abandoned by the owner thereof and becomes a noncomplying sign subject to removal by the highway engineer under the procedure set forth in ORS 377.775."

ORS 377.773 (emphasis added). ORS 377.775 provides, in part:

> "(1)   Any sign that fails to comply with ORS 377.700 to 377.840 hereby is declared to be a public and private nuisance. In addition to the penalties provided by ORS 377.992 for violation thereof, such a sign may be removed by the highway engineer or the duly authorized representative of the engineer as provided by this section. The engineer may enter upon private property and remove the sign without incurring any liability therefor.
>
> "* * * * *
>
> "(3)(a)   If a noncomplying sign bears the name and address of its owner or if the owner of the sign is readily identified and located, the engineer shall notify the owner that the sign is in violation of ORS 377.700 to 377.840 and that the owner has 30 days from the date of the notice within which to make the sign comply, to remove the sign or to request a hearing before the engineer within the time specified in the notice.

---

We further note that, in the argument that followed plaintiff's sixteenth assignment of error, an assignment that did pertain to the conversion claim, plaintiff incorporated certain constitutional arguments from another assignment of error. Those arguments, however, were directed toward plaintiff's claim that it could ignore the hearing requirements of the OMIA because the OMIA is unconstitutional. That presentation, likewise, did not provide the Court of Appeals with notice that plaintiff had premised its conversion claim on the assertion that the OMIA is unconstitutional.

"(b)    If the sign is not made to comply or is not removed and if the owner does not request a hearing within the time required, or if the owner after a hearing fails to comply with the final order in the proceedings, the highway engineer or the duly authorized representatives of the engineer may remove and destroy or otherwise dispose of the sign.

"* * * * *

"(5)    The owner is liable for, and the highway engineer shall collect, the costs of removing a sign. Costs shall be determined by the highway engineer on the basis of actual costs of removal or on a square-foot flat fee basis."

ORS 377.710(31) defines the term "sign" as

"any sign, display, message, emblem, device, figure, painting, drawing, placard, poster, billboard or other thing that is designed, used or intended for advertising purposes or to inform or attract the attention of the public, and the term includes the sign structure, display surface and all other component parts of a sign[.]"

"Sign structure" means "the supports, uprights, braces, framework and display surfaces of a sign." ORS 377.710(35).

As noted, plaintiff claims that a jury should be permitted to decide whether the state committed conversion by failing to comply with the requirements of the OMIA in removing the first billboard. First, plaintiff argues that it made the first billboard comply by removing all copy from the billboard, leaving the billboard blank. Second, even if the blank billboard remained a nonconforming sign under the OMIA, plaintiff argues that ORS 377.773 provides that a billboard must be blank for at least six months before the state may remove it. The first billboard was blank for only four or five months. Third, with respect to the 30-day period set out in ORS 377.775(3)(a), plaintiff argues that, as a grammatical matter, that period refers only to the time within which a hearing must be requested and does not limit the time within which a sign must be brought into compliance. Therefore, according to plaintiff, the fact that the first billboard might have been nonconforming for more than 30 days after the notice does not insulate the state from liability. Finally, plaintiff argues that the state is estopped from arguing that plaintiff failed to comply with the statute, because one of its

employees told plaintiff that the state would not remove the first billboard if plaintiff removed the copy from it.

Respecting plaintiff's first argument, the state responds that removing the advertisement or other message from an otherwise noncompliant billboard does not bring the billboard into compliance with the OMIA:

"If one of the options [under ORS 377.775(3)(b)] is to remove the sign (the message and the structure), it would make little sense to conclude that the legislature also intended to permit a person simply to remove the message."

Respecting plaintiff's second argument, the state contends that ORS 377.773 does not apply to signs that already violate the OMIA; rather, that statute applies only to situations in which the blank sign otherwise complies with the OMIA. Plaintiff's billboard, as plaintiff implicitly acknowledges, was erected without a permit and was a nonconforming sign under the OMIA from the outset.

The state rejects plaintiff's argument that the 30-day period set out in ORS 377.775(3)(a) applies only to the time for requesting a hearing. It contends that the statute "makes clear that the legislature understood that the 30-day period limited the time in which any violation could be cured."

Finally, respecting plaintiff's estoppel argument, the state contends that plaintiff failed to advance an estoppel theory on appeal. Alternatively, the state argues that a state employee has no authority to depart from the terms of the statute.

The Court of Appeals rejected each of plaintiff's arguments regarding the conversion claim. The court held that the 30-day period applies to bringing a sign into compliance and that removing the advertisement or other message from a sign does not render the billboard compliant with the OMIA:

"Compliance means obtaining a permit, ORS 377.725, and removal of the 'sign' means removal of the 'structure.' *See* ORS 377.710[(31)] and [(35)] ('sign' includes 'the sign structure,' which means 'the supports, uprights, braces, framework and display surfaces of a sign'). Plaintiff took none of

these actions within the required time period, and the [state] therefore had authority to remove the entire billboard structure, whether or not plaintiff had removed the display advertising."

*Outdoor Media Dimensions*, 150 Or App at 112 (footnotes omitted). The Court of Appeals further noted:

"[O]ne of the policies underlying the OMIA is to 'preserve the natural beauty and aesthetic features of [the state's] highways and adjacent areas.' ORS 377.705. A blank billboard is just as contrary to that purpose as is a billboard with advertising."

*Id.* at 112 n 6 (second brackets in original). The Court of Appeals did not consider plaintiff's estoppel theory:

"Although plaintiff's president alleged in an affidavit that a [state] employee told plaintiff that if it took down the radio ad the billboard structure would not be removed, plaintiff does not argue on appeal that its reliance on that advice somehow deprived the [state] of authority to remove the structure. Plaintiff only argues that its removal of the advertising brought the structure into compliance with the OMIA."

*Id.* at 112 n 7.

■      We begin by addressing plaintiff's first two statutory arguments together, as they are interrelated. Those arguments raise issues of statutory construction, to which we apply the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Under that methodology, we first examine the text and context of the statutory provisions at issue. *Id.* at 610-11. If legislative intent is clear based upon an examination of text and context, then we proceed no further. *Id.* at 611.

■■      We begin with two observations. First, at least until plaintiff removed the advertisement and religious message, the first billboard was an "outdoor advertising sign" under the OMIA. ORS 377.710(24). Second, during that period, the billboard also was a nonconforming sign under the OMIA, because plaintiff had no permit for it. ORS 377.715; ORS 377.725. With those observations in mind, it becomes evident

that plaintiff frames its first question—whether a blank billboard complies with the OMIA—too broadly. The facts of this case present the question whether a billboard that was a nonconforming outdoor advertising sign under the OMIA becomes a complying sign when the owner of the billboard removes the advertising or other message.

■     We begin and ultimately end our analysis with ORS 377.773. Again, that statute provides that *"[a]ny* outdoor advertising sign which does not have copy on the display surface for a period of six months shall be deemed to have been abandoned by the owner thereof and becomes a noncomplying sign subject to removal * * *." (Emphasis added.) "Any" is defined, in part, as "one indifferently out of more than two : one or some indiscriminately of whatever kind." *Webster's Third New Int'l Dictionary*, 97 (unabridged ed 1993); *see also Fleming v. United Services Automobile Assn.*, 329 Or 449, 456, 988 P2d 378 (1999) (in context, "any" synonymous with "every"), *modified on recons* 330 Or 62, 996 P2d 501 (2000). ORS 377.773, therefore, applies to outdoor advertising signs of all species, including those that do not comply with the OMIA.

Plaintiff's argument to the contrary notwithstanding, ORS 377.773 does not provide that the owner of a noncomplying sign may bring that sign into compliance by removing the advertisements or other messages from it. That statute speaks to only *one* way, abandonment, out of a number of possible ways, in which an outdoor advertising sign might fail to comply with the OMIA. Moreover, ORS 377.773 does not purport, either expressly or impliedly, to affect other compliance provisions of the OMIA. Thus, if an outdoor advertising sign complied with the OMIA before abandonment, then ORS 377.773 would render that sign noncompliant *because* of the abandonment. If, however, an outdoor advertising sign already had failed to comply with the OMIA and subsequently was abandoned, then ORS 377.773 would provide an additional basis for deeming the sign noncompliant. In short, there is nothing in ORS 377.773 that supports plaintiff's argument.

To the contrary, the six-month limit for which an outdoor advertising sign lawfully may remain blank under

ORS 377.773 suggests the opposite conclusion. That is, at least with respect to otherwise noncompliant outdoor advertising signs, removing all advertisements or messages from the sign does not bring the sign into compliance with the OMIA, at least in any permanent sense. Even under the interpretation of ORS 377.773 that plaintiff advocates, the best for which the owner of a noncomplying sign could hope by removing the message would be a six-month grace period. If we were to adopt that construction—and, as noted above, we do not—then the result would not in any sense be the broader, permanent notion of compliance that plaintiff asserts that it achieved by removing the advertisement and religious message from its first billboard.

Nothing in the context of ORS 377.773 changes the conclusion that the text of the statute supports. ORS 377.775 sets out the procedural requirements for removing signs that do not comply with the OMIA. That statute provides the owner of an assertedly noncomplying sign with three options: (1) make the sign comply; (2) remove the sign; or (3) request an administrative hearing. ORS 377.775(3)(a). Although the parties and the Court of Appeals each relied to some extent on ORS 377.775 in their respective analyses, we conclude that that statute provides no clear insight as to whether the owner of a nonconforming sign may make the sign comply with the OMIA by removing the advertisement or other message.

In that regard, the only option under ORS 377.775(3)(a) and (b) that pertains to the question before us is the option to "make the sign comply." ORS 377.775(3)(a). As noted above, the Court of Appeals held that "[c]ompliance means obtaining a permit * * *." *Outdoor Media Dimensions*, 150 Or App at 112. We disagree. The OMIA is not drawn that narrowly. For example, in this case, plaintiff also could have brought the first billboard into compliance by, among other things, replacing the radio advertisement with a sign that was not an outdoor advertising sign or one that specifically is exempt from the OMIA permitting requirement. *See* ORS 377.735 (listing certain exempt signs). Thus, the fact that the statute permits the owner to make the sign comply merely raises, but does not answer, the question of what compliance means. In the context of nonconforming outdoor advertising

signs, ORS 377.773 provides the answer to that question and demonstrates, we think conclusively, that rendering the sign blank does not constitute compliance.

■ Having answered plaintiff's first question in the negative, its second question remains: Even if the first billboard was a nonconforming sign, was the state required to wait six months before removing it? Our analysis above answers that question. The six-month abandonment provision does not affect, expressly or impliedly, the other compliance provisions of the OMIA. Accordingly, if a blank outdoor advertising sign otherwise complies with the OMIA, then the state may not remove the sign until it has been blank for at least six months.

Applying the foregoing analysis to the facts of this case, plaintiff's act of removing the advertisement and religious message from the first billboard did not make that billboard a complying sign under the OMIA. Because the first billboard did not comply with the OMIA for reasons separate from whether the billboard had been abandoned, that is, plaintiff had no permit for it, the state was not required to wait for the sign to be blank for six months before removing it.

■ Plaintiff next argues that, even if making the billboard blank did not render it compliant, and even if the state did not have to wait six months under ORS 377.773 before removing the billboard, the state nevertheless acted prematurely. Plaintiff argues that the 30-day period set out in ORS 377.775(3)(a) applies only to the time within which the owner of a billboard must request a hearing following receipt of a notice from the state that the billboard violates the OMIA. That period, plaintiff continues, does not limit the time within which the owner either may remove the billboard or bring it into compliance. Such is the case, plaintiff argues, because paragraph (3)(b) of the statute authorizes the state to remove a sign only "[i]f the sign is not made to comply *or* is not removed *and* if the owner does not request a hearing within the time required * * *." (Emphasis added.) In plaintiff's words: "The time requirement does not refer to 'comply' since 'comply' and 'removed' are separated by 'or,' and both of

those words are separated from the hearing request provision with 'and.' "

Plaintiff's argument is not well taken. Plaintiff's construction ignores and would nullify the wording in paragraph (3)(a) of ORS 377.775 that immediately precedes the statutory text on which plaintiff relies. *See State v. K.P.*, 324 Or 1, 8, 921 P2d 380 (1996) (whenever possible, court will construe statute to give effect to all wording). Paragraph (3)(a) provides, in part, that "the owner has 30 days from the date of the notice within which to make the sign comply, to remove the sign or to request a hearing before the engineer within the time specified in the notice."[6] Paragraph (3)(a) establishes a 30-day period within which an owner at least either must remove the sign or make it comply with the OMIA.[7]

We apply the same analysis to the prepositional phrase in subsection (3)(b)—"within the time required." Plaintiff correctly argues that that phrase applies only to the wording "if the owner does not request a hearing." The problem for plaintiff, however, is that its argument stops there. In so limiting its argument, plaintiff appears to assume that no other statutory provision bears upon the question that plaintiff presents. As noted, however, plaintiff's selective presentation ignores the import of the text that immediately precedes subsection (3)(b), which gives sign owners 30 days to remove the sign or make it comply with the OMIA. That provision answers the question presented directly and, in our view, removes any ambiguity that might arise from examining subsection (3)(b) in isolation.

---

[6] The phrase "within the time specified in the notice" might permit the state to set a time other than 30 days from the date of the notice within which to request a hearing. That is a question we need not answer because, regardless of the meaning of that prepositional phrase, when determining its application, the rule of the last antecedent limits the reach of the phrase to the antecedent "to request a hearing." *See State v. Webb*, 324 Or 380, 386-89, 927 P2d 79 (1996) (applying rule of last antecedent at first level of statutory construction analysis).

[7] Presumably, when a sign owner requests a hearing, the timelines are adjusted to permit the agency to adjudicate the owner's claims. The notice sent to plaintiff suggests as much: "If you fail to respond, *or* if the sign is not removed or corrected as provided in this notice, it becomes subject to removal * * *." However, we need not and do not answer that question, because it is not presented by the facts of this case. Here, plaintiff did not request a hearing respecting the first billboard.

Finally, plaintiff does not identify, and we have not discerned, any other context respecting those statutory provisions that would alter our reading of the plain text of the statute. Accordingly, we conclude that the intent of the legislature is clear. At least in the absence of a request for a hearing, the OMIA limits sign owners to 30 days within which to correct or remove the assertedly noncompliant sign before the state may remove it.

■ Plaintiff next argues that, even if the OMIA authorized the state to remove the first billboard, the state is estopped from relying on the OMIA as a defense against plaintiff's conversion claim. That is so, plaintiff contends, because a state employee told plaintiff that, if plaintiff removed all speech from the first billboard, then the state would not remove the billboard. Plaintiff asserts that it relied upon that statement and removed all speech from the billboard. Contrary to its promise to plaintiff, however, the state still removed the billboard.

As noted, the Court of Appeals concluded that plaintiff had not advanced on appeal the argument that plaintiff's reliance on the employee's statement deprived the state of the authority to remove the first billboard as a noncomplying sign under the OMIA. *Outdoor Media Dimensions*, 150 Or App at 112 n 7. Instead, the Court of Appeals concluded that plaintiff had argued only that its removal of the advertising and religious message brought the billboard into compliance with the OMIA and, accordingly, the court did not entertain plaintiff's argument. *Id.* On review, the state contends that the Court of Appeals correctly construed the nature of plaintiff's estoppel argument on appeal. We agree.

In its appellant's brief in the Court of Appeals, plaintiff did raise impliedly, as a question in the introductory portion of its brief, the estoppel argument that it seeks to maintain on review. In its arguments in support of plaintiff's assignments of error in that brief, however, plaintiff asserted only that, "[a]fter negotiations with the individual defendants * * *, [p]laintiff made the sign comply by removing all speech." As the Court of Appeals concluded, that is not the same argument. Moreover, even were we to conclude that the placement of the introductory question is not fatal in and of

itself, plaintiff failed to develop its argument, or cite to any pertinent authority, in the body of the brief. Accordingly, the Court of Appeals did not err in concluding that plaintiff had failed to argue on appeal that the state's alleged representation deprived the state of the authority to remove the first billboard. *See* 331 Or at 643 n 5 (noting that plaintiff's failure to present argument regarding constitutional basis for conversion claim constituted failure to make that argument on appeal).

In sum, we conclude that the trial court did not err in granting summary judgment to the state on plaintiff's first claim for relief.[8]

## B. *Second Claim for Relief—42 USC § 1983*

■ ■ Plaintiff's second claim for relief asserts a cause of action under 42 USC § 1983 and is premised on allegations that relate to the first billboard.[9] Plaintiff alleges various violations of its constitutional rights, two of which implicate state law. First, plaintiff claims that the state denied it due process by enforcing the OMIA in the first instance, because the statute violates Article I, section 8, of the Oregon Constitution.[10] Second, plaintiff asserts that, even if the OMIA passes state constitutional muster, the state violated plaintiff's due process rights by failing to apply that statute correctly. Those assertions, without more, are not well taken. As the state correctly responds, a "mere error of state law"—which is all that plaintiff presents in its first and second arguments—does not constitute a denial of due process. *Engle v. Isaac*, 456 US 107, 121 n 21, 102 S Ct 1558, 71 L Ed

---

[8] As noted, plaintiff's first claim for relief also included a request for a declaratory judgment that plaintiff is not liable for the $962.50 in costs that the state sought for removing the first billboard. Plaintiff's declaratory judgment claim depends upon the disposition of its conversion claim. Because we have rejected plaintiff's arguments with respect to plaintiff's conversion claim, plaintiff's request for a declaratory judgment in the first claim for relief likewise fails.

[9] Plaintiff's section 1983 claim is directed at the three state employees named individually as defendants. For ease of reference, we continue to refer to those defendants collectively as "the state."

[10] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

2d 783 (1982). The trial court correctly granted summary judgment to the state with respect to plaintiff's first two asserted constitutional violations.

Plaintiff also asserts that the state's acts of (1) sending the notice that the first billboard be removed or corrected and (2) subsequently removing the billboard violated plaintiff's right to due process of law. That is so, plaintiff claims, because

> "[t]he OMIA violates the Due Process provisions of the United States Constitution by not providing for a specified brief period upon which [the state] must act upon an application for a permit, and not providing for prompt judicial review of a denial of a permit application."

Relying primarily upon *Freedman v. Maryland*, 380 US 51, 85 S Ct 734, 13 L Ed 2d 649 (1965), plaintiff argues that the permitting and hearing provisions of the OMIA effect an unlawful prior restraint that "gives public officials the power to deny use of a forum in advance of actual expression." ·

The problem with that argument relates to causation. Plaintiff advances its argument in the context of plaintiff's claim for money damages under section 1983—damages that plaintiff alleges resulted from the state's violation of plaintiff's constitutional rights. Plaintiff, however, neither pleaded nor argued that the state's application of the OMIA's permit and hearing provisions *caused* plaintiff's alleged damages.[11] To prevail on its section 1983 claim, plaintiff must prove that the asserted constitutional violation caused the damages that plaintiff seeks to recover. *See, e.g., Brower v. Inyo County*, 489 US 593, 599, 109 S Ct 1378, 103 L Ed 2d 628 (1989) (discussing requirements of proximate causation with respect to section 1983 claims).

As noted, plaintiff's alleged damages do not derive from the lack of time limits under the OMIA for obtaining

---

[11] Moreover, respecting prior restraint, none occurred under the facts of this case. As noted, plaintiff placed advertising and a religious message on its first billboard without obtaining a permit. It was only after it both had placed advertising and a religious message on the billboard and had received the state's notice of violation that plaintiff attempted to obtain a relocation permit.

permits or judicial access. Instead, plaintiff's asserted damages—resulting from the loss of its first billboard—derive from the fact that the OMIA requires a sign owner to have a permit before being permitted to relocate a billboard. *See* ORS 377.767, ORS 377.768 (respecting relocation permits). Because plaintiff could not obtain a permit, plaintiff was unable to relocate its first billboard. Plaintiff does not argue that, had the state given it more time, plaintiff would have been able to secure a permit.

On these facts, it is the validity of the permit requirement—which is not at issue respecting this alleged constitutional violation—and not the lack of time constraint, that we must address in deciding plaintiff's claim for monetary damages under section 1983. Plaintiff's prior restraint theory, therefore, is misplaced. Accordingly, the trial court correctly granted summary judgment to the state respecting plaintiff's prior restraint allegation.

We proceed to consider plaintiff's remaining allegations. Those pertain to the question whether the OMIA violates plaintiff's free speech rights under the First and Fourteenth Amendments to the United States Constitution.[12] To those allegations, the state raised the affirmative defense of qualified immunity in the performance of discretionary functions.

█ We begin by addressing the analytical framework for assessing plaintiff's remaining section 1983 claims. With respect to section 1983 claims that involve, as here, a defense of qualified immunity, the United States Supreme Court has stated:

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. 42 U.S.C. § 1983. In order to

---

[12] The First Amendment provides, in part: "Congress shall make no law * * * abridging the freedom of speech * * *." The Fourteenth Amendment provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity that our cases have recognized requires that the official be shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818[, 102 S Ct 2727, 73 L Ed 2d 396] (1982)."

*Conn v. Gabbert*, 526 US 286, 290, 119 S Ct 1292, 143 L Ed 2d 399 (1999). Thus, the defense of qualified immunity is lost if two elements are present: (1) a violation of a constitutional right; and (2) that the right violated, at the time of the violation, was clearly established.

■ The Supreme Court also has stated that courts normally should analyze those two elements in the order set out above:

"[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."

*County of Sacramento v. Lewis*, 523 US 833, 841 n 5, 118 S Ct 1708, 140 L Ed 2d 1043 (1998). One of the reasons for that order of analysis is that immunity is intended "to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 US 226, 232, 111 S Ct 1789, 114 L Ed 2d 277 (1991). Normally, deciding the "purely legal question" that the first prong presents "permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on the merits." *Id.*

As it reaches us, this case does not present that concern. The record does not indicate an issue of fact prolonged the litigation below or prevented the trial court from summarily ruling on plaintiff's section 1983 claim. Neither do any of the arguments advanced on review suggest that we should answer one question before the other. In addition, under the

circumstances of this case, we see little or no contribution for this state court of last resort to make toward the advancement of what we conclude is an unsettled area of First Amendment jurisprudence in the context of plaintiff's section 1983 claims. For those reasons, we deem it appropriate to begin and end our discussion of plaintiff's section 1983 claim with the question whether the law clearly was settled at the time of the events in question. Thus, we proceed directly to that inquiry.

Plaintiff claims that, by enforcing the OMIA with respect to the first billboard, the state violated plaintiff's free speech rights under the United States Constitution. Both at the time of the conduct at issue here and today, the leading case addressing the constitutional parameters of governmental regulation of billboards, and the one upon which plaintiff relies most heavily, is *Metromedia, Inc. v. San Diego*, 453 US 490, 101 S Ct 2882, 69 L Ed 2d 800 (1981). Although a majority of the Court in *Metromedia* held that a San Diego billboard ordinance was facially invalid under the First Amendment, 453 US at 521, that majority could not agree on the reasoning for its holding. As did the Court of Appeals, we conclude that, as relevant here, *Metromedia* fails to "establish a governing standard for future cases." *Outdoor Media Dimensions*, 150 Or App at 114 (internal quotations and citation omitted).

The state's conduct respecting the first billboard occurred during 1993 and 1994. No cases from the Supreme Court decided during the 12-year span between *Metromedia* and the conduct at issue in this case (or after the conduct for that matter) serve to clarify the state of the law respecting the manner in which governments may regulate billboards without infringing upon free speech rights to the extent that would support the conclusion that the state in this case violated plaintiff's clearly established rights. With the law unsettled, the state was entitled to summary judgment based upon its defense of qualified immunity with respect to plaintiff's remaining constitutional allegations. Accordingly, the trial court did not err in granting summary judgment to the state as to the entirety of plaintiff's section 1983 claim.

## C. *Third Claim for Relief—Declaratory Judgment and Injunction*

We turn finally to plaintiff's third claim for relief. As noted, that claim ultimately was premised upon facts relating to the third billboard and sought (1) a declaration that the OMIA violates both the Oregon and United States Constitutions, and (2) an injunction prohibiting the state from ordering plaintiff to remove any speech from that billboard. The state argues in response that plaintiff failed to exhaust its administrative remedies.

Before reaching the merits of the state's argument, we first address whether the state is entitled to maintain that argument in this court. As noted, the state raised failure to exhaust as an affirmative defense in its answer to plaintiff's amended complaint. The state, however, did not file a motion for summary judgment on that basis. Instead, the state argued that *claim preclusion* barred each of plaintiff's claims for relief, including the third. Indeed, before the trial court, the state expressly noted that its argument "[wa]s based on claim preclusion, not exhaustion * * *."

In the Court of Appeals, the state continued to press its claim preclusion theory, but also argued that exhaustion requirements barred plaintiff's third claim for relief. The Court of Appeals, however, refused to entertain the latter argument:

> "Although the [state] raised 'exhaustion' as an affirmative defense in its answer, it did not assert it as a ground for summary judgment. Plaintiff was therefore denied the opportunity to develop a complete factual record on that issue for appeal, and we decline to affirm on those grounds."

*Outdoor Media Dimensions*, 150 Or App at 125. In a footnote, the Court of Appeals added:

> "For example, the trial court's order granting summary judgment included a 'stipulation' that plaintiff 'made a timely request for an administrative hearing upon receipt of the notice of violation regarding the third structure.' It is doubtful whether that alone established that plaintiff exhausted its administrative remedies: the record does not indicate whether plaintiff followed through on its request or what was the outcome of that hearing. Because the [state]

did not assert exhaustion as a ground for summary judgment, plaintiff was not on notice of the need to present additional evidence on that issue."

*Id.* at 125-26 n 28.

■      We disagree with the Court of Appeals' application in this case of the principle that an appellate court may affirm a correct decision of a trial court on a basis other than that upon which the trial court relied. At times denominated the "right for the wrong reason" principle, this court recently described it as follows:

"When a trial court makes a ruling, we will affirm that ruling on appeal, even if the trial court's legal reasoning for the ruling was erroneous, if another legally correct reason and, to the extent necessary, the record developed in the trial court support the ruling."

*State v. Rogers*, 330 Or 282, 295, 4 P3d 1261 (2000). In *State Farm Fire v. Sevier*, 272 Or 278, 537 P2d 88 (1975), the court explained the principle in this way:

"We are reluctant to reverse a trial court on grounds or theories other than those on which a case is tried and decided unless the parties have been afforded an opportunity to submit further briefs or argument. The considerations are different in cases in which we affirm a trial court. In such cases, when the trial court arrived at a correct result, but on grounds different than those which, in our opinion, are more proper as the basis for such a result, we believe that it is not improper to affirm the trial court; provided, of course, that the pleadings are sufficiently broad and there is sufficient evidence in the record * * *."

*Id.* at 298.

■      As developed by this court's decisions, the "right for the wrong reason" principle permits a reviewing court—as a matter of discretion—to affirm the ruling of a lower court on an alternative basis when certain conditions are met. The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the

alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision of the lower court must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance.

The Court of Appeals concluded that the record was insufficient *and* that plaintiff had not been afforded an opportunity to introduce evidence on the question of exhaustion of administrative remedies. *Outdoor Media Dimensions*, 150 Or App 125-26. We disagree. The present record is sufficient to support the state's alternative basis for affirmance and, although the state did not place emphasis on that basis until appeal, plaintiff suffered no disadvantage thereby.

In addressing the issue, we look to the evidence and allegations surrounding the third billboard that, at the time that the trial court granted final summary judgment, provided the predicate for plaintiff's claim for declaratory and injunctive relief.[13] Respecting the adequacy of the factual record, as noted, the parties stipulated in the trial court that

[13] We note that, when the trial court granted the state summary judgment against plaintiff's second amended complaint, the third claim for relief included allegations concerning both the second and the third billboards. As noted, plaintiff added the allegations concerning the third billboard because it had lost the right to place signs on the second billboard and was concerned that, without allegations regarding the third billboard, its claim for declaratory and injunctive relief might be moot. Plaintiff was well advised in that respect. When it lost the ability to place signs on the second billboard, it also lost the ability to present a justiciable controversy on those facts. *See, e.g., Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993) (justiciability requires "that the court's decision in the matter will have some practical effect on the rights of the parties to the controversy"); *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) ("In order for a court to entertain an action for declaratory relief, the complaint must present a justiciable controversy."). Accordingly, although plaintiff failed to delete the allegations

plaintiff timely had requested an administrative hearing after receiving the state's notice that the billboard violated the OMIA. The Court of Appeals noted that plaintiff's stipulation did not establish whether plaintiff followed through on its request for the administrative hearing or, if it did, what the outcome of that hearing was. For those reasons, the Court of Appeals deemed it "doubtful" whether the stipulation established that plaintiff had failed to exhaust its administrative remedies. *Outdoor Media Dimensions*, 150 Or App at 125-26 n 28. We have no disagreement with the Court of Appeals' observations about the questions that the trial court record leaves open. The ultimate issue that this court must address, however, is whether, in light of those omissions, the evidentiary record permits us to conclude that plaintiff failed to exhaust its administrative remedies. We believe that it does.

██ ██ This court has recognized the

> "general rule of administrative law that as to matters within the jurisdiction of an administrative agency, '[j]udicial review is only available after the procedure for relief within the administrative body itself has been followed without success.'"

*Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 721 (1982) (brackets in original); *see also Jackson v. Dept. of Rev.*, 298 Or 633, 637, 695 P2d 923 (1985) ("[a]dministrative remedies are not exhausted unless applicable procedures, prescribed by statute or by rule, have been satisfied"). The doctrine of exhaustion applies when a party, without conforming to the applicable statutes or rules, seeks judicial determination of a matter that was or should have been submitted to the administrative agency for decision. *See State ex rel MVD v. Norblad*, 320 Or 307, 313, 882 P2d 598 (1994) (party may not evade administrative review by seeking interlocutory relief in circuit court to overturn hearings officer's order quashing subpoena). As the court stated in *Norblad*:

---

concerning the second billboard from its second amended complaint, we need not consider those allegations in deciding plaintiff's third claim for relief.

"[I]f the hearings officer's order quashing the subpoena is an error, judicial review of that error is available [as provided by statute], after a final order issues. * * * That is the statutorily prescribed form of judicial review."

*Id.* at 314.

██ ██ Neither does the fact that the issues presented here are purely legal ones excuse the requirement that plaintiff exhaust its administrative remedies. *See Dennehy v. Dept. of Rev.*, 295 Or 574, 579, 668 P2d 1210 (1983) ("Statutorily required administrative review may not be ignored simply because the issue is a question of law."). Indeed, "[a]lthough it is an authority to be exercised infrequently, and always with care, Oregon administrative agencies have the power to declare statutes and rules unconstitutional." *Nutbrown v. Munn*, 311 Or 328, 346, 811 P2d 131 (1991). In short, the agency here had the authority to adjudicate the claims at issue. The question, then, is whether, having acknowledged the availability of administrative review, plaintiff has satisfied the applicable procedures before initiating this litigation.

██ As noted above, the OMIA provides three options to the owner of a sign for which a notice of violation has been issued. The owner may (1) make the sign comply, (2) remove the sign, or (3) "request a hearing before the engineer within the time specified in the notice." ORS 377.775(3)(a). The record below demonstrates without contradiction that, as to the third billboard, plaintiff sought to avail itself of one of those options, namely, the administrative remedy that ORS 377.775(3)(a) provides. Plaintiff did so by timely requesting an administrative hearing before the engineer. Having begun the administrative process with a timely request for an administrative hearing, and regardless of the outcome of that hearing, review of the agency's ruling would have been by petition for judicial review in the Court of Appeals under the Administrative Procedures Act. ORS 183.482 (providing for judicial review in Court of Appeals of contested cases). That, of course, did not happen, which is why the case came to us in this posture. For whatever reason, plaintiff chose to bring its dispute in a new forum. That decision is inconsistent with the principles of exhaustion discussed above. In our view, those facts alone—regardless of whatever else may

have happened later—demonstrate that plaintiff did not exhaust its administrative remedies. No further record is needed to rule upon the state's defense; neither could plaintiff have created a different record below that might have altered the outcome of the state's defense. It follows that the trial court did not err in granting summary judgment to the state with respect to plaintiff's third claim for relief.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.