On respondent's petition for reconsideration filed December 29, reconsideration allowed, former opinion (231 Or App 198, 217 P3d 1133 (2009)) adhered to March 24, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALEM JONATHAN ANDERSON,
*Defendant-Appellant.*

Marion County Circuit Court
05C51184; A135075

228 P3d 638

John R. Kroger, Attorney General, Jerome Lidz, Attorney General, and Leigh A. Salmon, Assistant Attorney General, for petition.

Before Brewer, Chief Judge, and Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges, and Edmonds, Senior Judge.

SCHUMAN, J.

## SCHUMAN, J.

The state petitions for reconsideration of our decision in *State v. Anderson*, 231 Or App 198, 217 P3d 1133 (2009). We grant reconsideration and adhere to our earlier decision.

As related in our earlier opinion, the facts are as follows:

> "Keizer police officers were inside an apartment executing a search warrant related to alleged drug offenses when they were told that two people—defendant and a companion—had approached the apartment, observed officers inside, walked away, and entered the vehicle that they had apparently arrived in. Two officers, Zavala and Johnson, immediately left the apartment to question the vehicle's occupants. They were joined by a third officer, Bamford. Zavala, according to his testimony, had a 'hunch' that defendant and his companion had come to the apartment for drug-related business. He approached the driver's side and spoke with the driver, defendant's companion, at the same time that Johnson and Bamford approached the passenger side and spoke with defendant. Zavala and Johnson were in uniform and displaying badges; Johnson was wearing a 'raid vest' with the word 'police' in large letters across the front. The engine of the car was not running.
>
> "Zavala then told the driver why he was contacting her:
>
> " 'I explained to her that we were executing a search warrant, that I was told that she had approached the door, her and her passenger. Because of this, we wanted to find out who they were, what interest they might have had with what we were doing there, or maybe they knew the individuals that—or individual that lived there at the apartment.'
>
> "The driver told Zavala that she did not have identification, but she provided her name and date of birth.
>
> "As Zavala was talking to the driver, Johnson was asking defendant to identify himself. Defendant told Johnson that he had no identification, but that his name was Steve Tipton. Unfortunately for defendant, Johnson knew the Tipton family and knew that defendant was not who he claimed to be; he immediately suspected that defendant

had committed the crime of giving false information to a police officer. ORS 162.385.

"Each officer heard the other's conversation, and they decided—apparently simultaneously—to ask both of the car's occupants to step out of the vehicle. Zavala then led the driver to a position several yards away from the car. Johnson, meanwhile, told defendant that he knew he was not Tipton. Thus confronted, defendant gave Johnson an identification card with his correct name. Johnson ran a warrant check, discovered an outstanding warrant from Polk County, and told defendant that he was under arrest. Johnson then walked to where Zavala was talking to the driver. He asked for her permission to search the car. She signed a consent form. A search of the car yielded the evidence that was the subject of defendant's motion to suppress."

*Id.* at 200-01. Defendant moved to suppress evidence that resulted from what he argued was an unlawful stop. The trial court denied the motion on the ground that the stop did not occur until after defendant gave Johnson a false name, at which point Johnson had reasonable suspicion that defendant had violated ORS 162.385.

On appeal, defendant argued that he and his companion were both stopped when the police officers began questioning them, and that, at that point, the police did not have reasonable suspicion of criminal activity. We characterized defendant's argument as follows:

"[D]efendant does not take the position that the evidence should be suppressed because the driver's rights were violated. Rather, he argues that, when the police in a single, indivisible act approached the car and identified themselves, indicated the purpose of their encounter, and asked both of the occupants for identification, the police violated both occupants' rights under Article I, section 9. That single violation, the argument continues, led to the discovery of the evidence, because if the police had respected the rights of the occupants, neither officer would have been in the position to question them, to extract consent from the driver, and to discover the contraband."

*Anderson,* 231 Or App at 202 (emphasis omitted; footnote omitted). The state, in reply, did not address the question of

when the stop occurred or whether there was reasonable suspicion at that time, beyond a single sentence in a footnote: "The state, however, does not concede that the initial encounter between defendant and Officer Johnson was a stop; rather, it was a mere encounter." Rather, the state contended only that we should affirm the trial court because defendant's arguments were an attempt to suppress evidence based on a violation of the driver's rights, not his own.

■    In its petition for reconsideration, the state argues that we erred in three respects. First, the state argues that "a defendant must have a *personal* protected privacy interest in the property that has been searched or seized," and he did not have such an interest in this case because he had no privacy interest in the contents of the driver's automobile. (Emphasis in state's petition.) We rejected that argument in our original opinion, *id.* at 203, and we reject it again without discussion. Second and third, the state now argues that, even if defendant was not lawfully stopped, he cannot establish a "but for" causal link between that violation of his rights and the discovery of the evidence, for either of two reasons: first, because, as a matter of logic, the discovery stemmed from the violation of the driver's rights independently of any violation of defendant's rights; and second, because the causal link between the violation of defendant's rights and the discovery of the contraband was broken by Johnson's discovery that defendant was the subject of an outstanding arrest warrant. The problem with both of the state's arguments is that they appear for the first time in its petition for reconsideration. They were not argued below, they were not mentioned or alluded to in the state's brief, and both sides waived oral argument. We will not address them now. *See Rogers v. RGIS, LLP*, 232 Or App 433, 435, 222 P3d 710 (2009) ("A petition for reconsideration is not a proper method for making an argument for the first time."); *State v. Schneider*, 204 Or App 710, 713, 131 P3d 842, *rev den*, 341 Or 392 (2006) ("We have held many times that a contention not raised in the brief on appeal will not be entertained for the first time on reconsideration.").

■■    Nor will we address the claims under the "right for the wrong reason" doctrine. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

That is so for two reasons. First, the state does not ask us to do so, even in its petition for reconsideration. Second, we can affirm on the basis of a theory that the state did not argue below only if the record below would be the same had the state raised the argument it now makes. *Id.* at 660. Here, as the state recognized in its petition for reconsideration, "there remains an open factual question related to attenuation." We therefore could not affirm under *Outdoor Media Dimensions Inc.*, even if the state requested us to do so.

Reconsideration allowed; former opinion adhered to.