Submitted July 30, 2009, affirmed April 21, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ELIZABETH MAXIE,
aka Elizabeth C. Maxie,
*Defendant-Appellant.*

Multnomah County Circuit Court
070444471; A137338

230 P3d 69

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Amanda J. Austin, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Deits, Senior Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894; unlawful possession of a controlled substance, ORS 475.840; and misdemeanor driving while suspended or revoked, ORS 811.182. She assigns error to the trial court's denial of her motion to suppress evidence. We affirm.

The facts are undisputed. Portland Police Officer Pontius was driving in Portland in a marked patrol car when he observed a car parked on a residential street. As he drove by the parked car, it appeared that defendant, who was seated in the driver's seat; slumped down, as if to avoid detection. Pontius pulled his patrol car into a driveway located a few houses down the street, parking so that his car was not visible to defendant. He did not activate his patrol car's emergency lights or siren.

Pontius got out of his car, walked back to the parked car, and spoke with defendant through a partially open front passenger window. He first asked defendant if everything was okay, to which she responded that she had been in a fight with her husband a short time ago and had driven to her current location to try to talk with a friend who lived nearby. Pontius then explained to defendant that the area was known to be a high-crime area involving drugs and prostitution and that he "simply wanted to make sure that nothing illegal was occurring."

Defendant responded that nothing illegal was occurring, after which Pontius asked defendant for her driver's license so that he could identify her. Defendant searched for her license but was unable to locate it, at which point she gave Pontius her name and date of birth, which he wrote down in his notebook. Pontius thanked defendant, then placed his notebook back in his pocket and returned to his patrol car, which, as noted, was parked out of defendant's sight. The engine of defendant's car, which had been running when Pontius approached the car, was still running when he returned to his patrol car.

Once back in his patrol car, Pontius ran a check on defendant and learned that her driver's license was suspended. After requesting a cover unit, Pontius got out of his car and walked back to defendant's car. Although he believed that he had a lawful basis to arrest defendant for driving while suspended, he did not do that and did not question defendant about her suspended license. Instead, he asked defendant if she would get out of her car to speak with him further. Defendant hesitated, and asked Pontius if she had to get out of her car, to which he replied that he simply wanted to speak with her further and that it was difficult to communicate with her through a partially open window. Defendant gave a little laugh and got out of her car. Pontius asked her if she possessed any illegal items, such as drugs or firearms. After defendant replied that she did not, Pontius requested consent to search her pockets "to make sure," and she consented.

During his search of defendant's exterior pockets, Pontius felt an object that he thought was a methamphetamine pipe. After questioning defendant about the object, Pontius learned that it was indeed a pipe, which he removed with defendant's consent. Pontius then requested and received consent from defendant to search her car. During that search, he found a pill in the driver's side door, which was later determined to be morphine, and two baggies containing a residue of white powder in defendant's purse.

Based on those discoveries, Pontius arrested defendant; she was later charged with unlawful possession of methamphetamine, unlawful possession of a controlled substance, and driving while suspended or revoked. Before trial, defendant moved to suppress all evidence obtained by Pontius from defendant, contending that the evidence was the product of an unlawful stop of defendant in violation of her state and federal constitutional rights.

At the suppression hearing, Pontius testified about the events leading to defendant's arrest. The trial court found that the interaction between Pontius and defendant did not reach the level of a restraint on defendant's liberty and that she consequently had validly consented to the search of her person and car. Accordingly, the court denied defendant's

suppression motion. After a bench trial, the court convicted defendant on all counts.

On appeal, defendant assigns error to the trial court's denial of her suppression motion, arguing that Pontius had stopped defendant at the outset of their encounter and that the stop violated Article I, section 9, of the Oregon Constitution because Pontius lacked reasonable suspicion that defendant was involved in any criminal activity. In response, the state argues that the interaction between Pontius and defendant did not amount to a stop and was instead "mere conversation." As explained below, we conclude that defendant was not stopped for purposes of Article I, section 9.

The Oregon Supreme Court has described three categories of encounters between police officers and citizens:

> "The first category, 'mere conversation' encounters, encompasses consensual interactions between police officers and citizens that require no justification and that do not implicate Article I, section 9. The second category, temporary restraints of a person's liberty for investigatory purposes—or 'stop[s]' under ORS 131.615(1) (1995)—constitutes a type of 'seizure' of a person under Article I, section 9, that must be justified by a reasonable suspicion of criminal activity. The third category, arrests, also constitutes a 'seizure' of a person under Article I, section 9, and must be justified by probable cause to believe that the person arrested has committed a crime."

*State v. Hall*, 339 Or 7, 16-17, 115 P3d 908 (2005) (citations omitted; brackets in *Hall*). A police officer-citizen encounter falls into the second category when "(a) [the] law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991). A "type (b)" stop under *Holmes* is established by showing, first, that the person subjectively believed that a law enforcement officer had interfered with the person's liberty or freedom of movement and, second, that the totality of the circumstances makes such a

belief objectively reasonable to "a reasonable person in defendant's position." *State v. Toevs*, 327 Or 525, 535-37, 964 P2d 1007 (1998). Determining whether a belief is objectively reasonable requires an inquiry as to whether a reasonable person *could have* believed that the person was not free to leave. *State v. Parker*, 225 Or App 610, 615, 202 P3d 205, *adh'd to as modified on recons*, 227 Or App 413, 206 P3d 259 (2009) (citing *State v. Ashbaugh*, 225 Or App 16, 25, 200 P3d 149 (2008), *rev allowed*, 346 Or 257 (2009)).

Here, defendant argues that a stop occurred when Pontius questioned her about possible involvement in illegal activity and then requested her identification. According to defendant, at that point a reasonable person would believe that the person was the subject of an ongoing criminal investigation and was not free to leave. We disagree.

During his initial interaction with defendant, Pontius indicated that the area in which defendant had parked her car was known for drug and prostitution crimes and that he wanted to know if defendant was involved in such activity. That statement did not transform the interaction between Pontius and defendant into a stop because it was general in nature and did not impart to defendant the suggestion that she was the subject of an ongoing investigation into any particular criminal activity. Defendant responded that she was not involved in criminal activity, and Pontius did not further pursue the inquiry.

The circumstances in this case can be contrasted with those in *State v. Anderson*, 231 Or App 198, 217 P3d 1133 (2009), *adh'd to on recons*, 234 Or App 420, 228 P3d 638 (2010), in which we concluded that an unlawful stop had occurred. In *Anderson*, three police officers approached the defendant and his companion, informed them that they had been serving a warrant on a nearby apartment, and explained that they were questioning the pair because they had been seen approaching that apartment and then turning away on seeing the officers. *Id.* at 200-01. We concluded that the defendant and his companion could have been stopped at the outset of the encounter because a reasonable person would not feel free to leave under those circumstances. [1] *Id.* at

---

[1] 1We remanded the case to the trial court for further factfinding to determine whether the defendant subjectively believed that his liberty had been restrained by the officers. *Anderson*, 231 Or App at 204.

203-04. The focused interest of the officers in *Anderson*, known to the defendant and his companion, transformed the encounter into a stop because it would be objectively reasonable for defendant and his companion to believe that they could not leave until the officers had completed their questioning.

It can also be objectively reasonable for a person to believe that his or her liberty has been restricted in the context of a warrant check by the police. The Supreme Court has concluded that, when an officer takes information or identification from a person and runs a warrant check in the person's presence, the person has been stopped because "a reasonable person would [not] think that he or she was free to leave at a time when that person is the investigatory subject of a pending warrant check." *Hall*, 339 Or at 19. We have applied that principle in a variety of circumstances. *See, e.g.*, *State v. Astorga*, 225 Or App 42, 47-48, 200 P3d 170 (2008), *rev den*, 346 Or 361, 211 P3d 930 (2009) (defendant was the subject of an ongoing investigation and was not free to leave when a police officer called for a warrant check in his presence); *State v. Highley*, 219 Or App 100, 110, 180 P3d 1230 (2008) (request for the defendant's identification following question about his probationary status created an objectively reasonable belief that the defendant's liberty had been restricted pending the results of a check on his probationary status); *State v. Rider*, 216 Or App 308, 313-14, 172 P3d 274 (2007), *rev dismissed*, 345 Or 595, 200 P3d 566 (2008) (officer's request to another officer to run a warrant check on the defendant in the defendant's presence constituted a stop even without the officer requesting or retaining the defendant's physical identification).

In contrast to those cases, the facts here are insufficient to create an objectively reasonable belief by defendant that her liberty had been restricted, that is, that she was required to remain in her parked car while Pontius ran a warrant check to determine if there was an outstanding warrant for her arrest. After Pontius had written down defendant's information, he closed his notebook and put it in his pocket, thanked defendant, and walked away. Pontius did not communicate to defendant his intention to make any use of the information, instruct her to remain while he ran a warrant check, or run the warrant check in her presence.

Based on the totality of the circumstances, we conclude that Pontius's interaction with defendant was a mere conversation and did not impose a restraint on defendant's liberty or freedom of movement. Because the evidence that defendant sought to suppress was not the product of an unlawful stop, the trial court did not err in denying defendant's suppression motion.

Affirmed.