Argued and submitted January 20, affirmed August 19, 2009

David HALLBERG,
*Plaintiff-Appellant,*

*v.*

CITY OF PORTLAND,
*Defendant-Respondent.*

Multnomah County Circuit Court
060100688; A134727

215 P3d 866

Kevin Keaney argued the cause and filed the briefs for appellant.

Harry Auerbach, Chief Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

.

**LANDAU, P. J.**

Plaintiff initiated this action against his former employer, defendant City of Portland, for indemnity of expenses that plaintiff incurred in defending an action that had been brought against him in federal court. The city moved for summary judgment on a variety of grounds, including that plaintiff is estopped from seeking indemnity in this case given the position that he successfully asserted in the federal court action and that, in any event, he is not entitled to indemnity on the merits. The trial court granted the city's motion on the latter of those two arguments and entered judgment dismissing plaintiff's claim. Plaintiff now appeals, arguing that the court erred in concluding that he is not entitled to indemnity from the city. The city responds that the trial court was correct in dismissing plaintiff's claim on that ground and that, in the alternative, the court may be affirmed on the alternative ground of judicial estoppel. We agree with the city that judicial estoppel applies and that, on that ground, the trial court correctly granted the city's summary judgment motion. We therefore affirm.

The relevant facts are undisputed. Plaintiff worked for the city as a housing inspector. In 1996, the city received complaints from neighbors about garbage and broken gutters around a house that was owned by Hays, who was then in his 80s. Plaintiff inspected the Hays house, found various housing code violations, and cited Hays for the violations. Monthly enforcement fees were levied against the property and became a lien.

In May 1998, Hays moved into an adult foster care home because he was unable to care for himself. His relatives lived in the house until September 1998, when Hays evicted them. After the house became vacant, plaintiff "red tagged" it, which meant that no person could lawfully live in it until the violations were remedied.

In 1999, Hays became delinquent on his mortgage and was about to lose the house to foreclosure. In the meantime, Hays was hospitalized for a broken hip and was taking medication for certain mental disabilities. A sale of Hays's home was scheduled for June 1999. Plaintiff decided to buy the home himself. He met with Hays and negotiated with

him to purchase the house for $1,300 cash, with plaintiff to assume the outstanding mortgage.

In 2004, Hays filed a complaint against plaintiff in federal court under 42 USC section 1983, claiming that, in forcing him out of his home and then purchasing that home for himself, plaintiff deprived him of his federally protected constitutional rights to substantive and procedural due process. In addition, Hays alleged claims of elder abuse, ORS 124.100 to 124.140, and unlawful trade practices, ORS 646.605 to 646.638.

Plaintiff requested that the city defend and indemnify him under ORS 30.287, asserting that any liability that he incurred in the Hays litigation arose out of the performance of his duties as a housing inspector. After an investigation, the city rejected plaintiff's tender, finding that Hays's claims did not arise out of an act or omission in the performance of his duties and that any work-related conduct associated with plaintiff's purchase of Hays's house amounted to malfeasance in office. (The city later discharged plaintiff for his misconduct in connection with his purchase of Hays's home.) Plaintiff then asserted a cross-claim against the city for indemnity.

Plaintiff moved for summary judgment on Hays's claims against him. In support of his motion, plaintiff asserted that the housing code violation citations that he issued to Hays were not the cause of Hays's alleged loss and that the only conduct relevant to Hays's claims was plaintiff's purchase of Hays's house. That action, plaintiff asserted, was not undertaken "under color of law" or in the course of plaintiff's business, vocation, or occupation:

> "Here, while [plaintiff's] actions in citing [Hays's] house for code violations were 'state action,' those actions are not the issue in this case (despite the misleading claim in plaintiff's brief that the code citations 'cut off any ability to generate income from the property and resulted in a default on the mortgage payments and a scheduled foreclosure sale'). As discussed above, both the damaged condition of the house and the unpaid mortgage were the result of the acts of [Hays's] relatives, which occurred independently of the

code citations, and would have occurred regardless of whether citations had ever been issued.

> "*[Plaintiff's] offer to buy [Hays's] house was not made in the course of his job, and [plaintiff] made that clear at the time*: 'I wanted to be sure that [Hays] understood that I wasn't there as an inspector.' That [plaintiff] initially learned of the property in the course of his job does not make his later offer to buy it 'state action[.]' "

(Underscoring plaintiff's; emphasis added.) Thus, in federal court, plaintiff asserted that any action that he took in the course of his duties as a housing inspector did not cause Hays to lose his home and that his purchase of the house from Hays was not made in the performance of his duties.

The federal court apparently agreed with plaintiff and granted his motion, dismissing all claims against him with prejudice. Hays appealed, but the United States Court of Appeals for the Ninth Circuit affirmed, explaining that plaintiff's conduct did not cause Hays to lose his home because Hays's home was "already in foreclosure due to the actions of some of his own relatives before [plaintiff] purchased it, and [Hays] does not raise any issues of triable fact from which a reasonable jury could find that [plaintiff] caused him to lose his home."

Plaintiff meanwhile initiated this action against the city under ORS 30.287 for his expenses incurred in successfully defending against Hays's claims. The city moved for summary judgment, arguing that, because plaintiff's conduct that led to the Hays litigation did not occur in the performance of his employment duties, his claim for indemnity fails. In the alternative, the city argued that plaintiff's indemnity claim also fails because it is based on an assertion (that Hays's claims *did* arise out of the performance of his employment duties) that is directly contrary to the assertion on which he successfully relied (that Hays's claims *did not* arise out of the performance of his employment duties) in the federal court case. Under principles of judicial estoppel, the city argued, plaintiff should be precluded from asserting that he is entitled to indemnity for conduct that occurred in the performance of his employment duties. The trial court granted the city's motion on the ground that the actions alleged by

Hays in his federal lawsuit did not occur in the scope of plaintiff's employment with the city and that the city, as a result, has no duty to indemnify plaintiff.

Plaintiff appeals, assigning error to the trial court's decision to grant the city's summary judgment motion. Plaintiff contends that there are issues of fact about whether the circumstances that caused Hays's alleged damage are traceable to plaintiff's actions in the scope of his employment. The city responds that, on the undisputed facts, there was no link between plaintiff's performance of his employment-related duties and his purchase of Hays's house. As an alternative ground for affirmance, the city contends that plaintiff's claims are barred by judicial estoppel. Plaintiff does not reply to the city's judicial estoppel argument.

■ We agree that plaintiff's claims are barred by judicial estoppel and therefore do not address his contentions concerning the trial court's decision. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

ORS 30.287 sets forth the right of an employee of a local public body to be indemnified by the public employer and provides, in part:

> "(1)   If any civil action, suit or proceeding is brought against any officer, employee or agent of a local public body other than the state which on its face falls within the provisions of ORS 30.285(1), or which the officer, employee or agent asserts to be based in fact upon an alleged act or omission in the performance of duty, the officer, employee or agent may file a written request for counsel with the governing body of the public body. The governing body shall thereupon engage counsel to appear and defend the officer, employee or agent unless after investigation it is determined that the claim or demand does not arise out of an alleged act or omission occurring in the performance of duty, or that the act or omission complained of amounted to malfeasance in office or willful or wanton neglect of duty, in which case the governing body shall reject defense of the claim.

> "* * * * *

"(3)   If the governing body rejects defense of a claim under subsection (1) of this section, no public funds shall be paid in settlement of the claim or in payment of any judgment against such officer, employee or agent. Such action by the governing body shall not prejudice the right of the officer, employee or agent to assert and establish in an appropriate proceeding[ ] that the claim or demand in fact arose out of an alleged act or omission occurring in the performance of duty, or that the act or omission complained of did not amount to malfeasance in office or willful or wanton neglect of duty, in which case the officer, employee or agent shall be indemnified by the public body against liability and reasonable costs of defending the claim."

At least in the context of this case, the determinative question is whether the city, in denying plaintiff's request for indemnity, correctly determined that the Hays litigation did not arise out of an alleged act or omission in the performance of plaintiff's duty to the city.

In this case, plaintiff contends that there was evidence from which a trier of fact could find that—as Hays alleged in the federal court litigation—plaintiff's conduct in the course of his duties as a housing inspector for the city, including the issuance of housing code citations and the red-tagging of Hays's house, contributed to Hays's damages by precipitating the threatened foreclosure and plaintiff's ultimate purchase of the house.

The problem is that, in the federal court litigation, plaintiff took a very different position—in fact, precisely the opposite position. In the Hays litigation, plaintiff asserted that his work as an inspector did not bear any relationship to Hays's loss of the house, which he blamed on Hays's family. According to plaintiff's arguments in the Hays litigation, Hays lost his house as a "result of [Hays's] relatives, which occurred independently of the code citations, and would have occurred regardless of whether the citations had ever been issued." Furthermore, plaintiff argued in that case, his offer to purchase the Hays house "was *not* made in the course of his job, and [plaintiff] made that clear at the time." (Emphasis added.) Plaintiff prevailed on precisely those arguments, as confirmed by the Ninth Circuit's decision.

██ Under Oregon law, the equitable doctrine of judicial estoppel may preclude a party from taking a position in one judicial proceeding that is inconsistent with the position that the same party successfully asserted in a different judicial proceeding. *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 609, 892 P2d 683 (1995). The application of judicial estoppel depends on the existence of three predicates: (1) a benefit; (2) obtained in a different judicial proceeding; (3) by means of asserting a position inconsistent with a position asserted in a later judicial proceeding. *Sugar and Sugar*, 212 Or App 465, 470, 157 P3d 1263 (2007).

In this case, all three predicates are present. Plaintiff obtained the benefit of dismissal of the Hays litigation in federal court by means of asserting that the fact that Hays lost his home had nothing to do with plaintiff's conduct or with his employment with the city.

Because plaintiff successfully asserted in the federal court that there was no connection between his employment activity and Hays's loss of his house, we conclude that judicial estoppel prevents plaintiff from now arguing that there is a question of fact as to whether his employment activities contributed to Hays's damages.

Affirmed.