Argued and submitted October 20, 2008, affirmed September 30, 2009

## Michael KOZAK,
### Larry Kine, Dan Smith,
### Bud Capell and Carmen Capell,
*Plaintiffs-Respondents,*

*v.*

## CITY OF BEND,
### an Oregon municipal corporation,
*Defendant-Appellant.*

Deschutes County Circuit Court
06CV0095MA; A134616

217 P3d 1118

164

James Forbes argued the cause for appellant. With him on the briefs was Forbes & Schannauer, LLP.

John E. Laherty argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Haselton, Judge, and Wollheim, Judge.

HASELTON, J.

**HASELTON, J.**

Defendant, the City of Bend, appeals a general judgment in which the trial court declared that an ordinance and resolution that created an economic improvement district (EID) within the city and imposed assessments against affected property owners, including plaintiffs, were "null, void and unenforceable." On appeal, defendant contends that (1) the trial court lacked jurisdiction to issue a declaration concerning the validity of the ordinance because plaintiffs' exclusive remedy was by writ of review; and (2) the trial court erred in granting plaintiffs summary judgment based on its conclusion that defendant failed to substantially comply with ORS 223.117(1)(a), the statutory requirement that an assessment ordinance describe "the economic improvement project to be undertaken or constructed." We agree with the trial court that it had jurisdiction to issue a declaration, and we conclude, as an alternative basis for affirmance, that the ordinance failed to comply with another statutory requisite, ORS 223.117(2)(b).[1] Accordingly, we affirm.

The operative facts are not in dispute. Defendant gave notice to affected property owners that it would "hold a public hearing during its regular City Council meeting on October 19, 2005, on the proposal by the Bend Downtowners Association [(the Downtowners)] for the City to create an Economic Improvement District (EID) within the Downtown core as reflected on the attached map." After that hearing, on November 2, 2005, defendant adopted Ordinance NS-1985 (the ordinance). Five aspects of the ordinance are pertinent to the issues on appeal.

---

[1] ORS 223.117 provides, in part:

"(1) An ordinance adopted under ORS 223.114, shall provide for enactment of an assessment ordinance that:

"(a) Describes the economic improvement project to be undertaken or constructed.

"* * * * *

"(2) The ordinance shall also:

"* * * * *

"(b) Require the city recorder or other person designated by the council to prepare the proposed assessment for each lot in the district and file it in the appropriate city office."

*First*, the ordinance created the EID. Specifically, the ordinance provided:

"The City Council of Bend hereby approves and creates the 'Bend Downtown Economic Improvement District' for the purpose of promoting within said district economic improvements by planning and/or management of development or improvement activities; by landscaping or other maintenance of the public areas; by promotion of commercial activity or public events; by activities in support of business expansion, and development; and by improvements in parking systems or parking enforcement including but not limited to the provision of private security services for the District."

The ordinance limited the duration of the EID to three consecutive years beginning January 2006, unless extended in accordance with the requirement of the pertinent statutes.

*Second*, the ordinance subjected all commercial properties within the EID's boundaries to an assessment of "$0.11 per square foot per year of real property." The annual assessments were "expected to be approximately $100,000.00," which the city council found was the "probable cost" of the funded activities.

*Third*, the ordinance established the specific boundaries of the EID and the general standards governing assessments. The city council's findings in the ordinance explained that (1) "[t]he area within the boundaries of the proposed district is zoned commercial"; (2) "[n]o residential real property or any portion of a structure used primarily for residential purposes will be assessed"; and (3) "[t]he rate to be assessed each benefited and assessed property is in proportion to the benefit" that the property may derive from the EID.

*Fourth*, the ordinance established the procedure for assessing affected property owners and for challenges to assessments. Specifically, the ordinance provided:

"(a)   The City Clerk shall promptly mail to property owners within the boundaries of the [EID], a notice identifying the amount of the proposed assessment for each property, and informing the property owner of a meeting scheduled for December 7, 2005, at which the property owners may appear to submit written objections to the assessment.

"(b) The City Council will consider the objections and may adopt, correct, modify or revise the proposed assessment. The Council will not impose the assessment if written remonstrances are received at the public hearing from owners of property upon which more than 33 percent of the total amount of assessment is imposed.

"(c) After the December 7 hearing, if the Council decides to impose the assessment, it shall impose the assessment by resolution, determine whether the properties within the district shall bear all or a portion of the costs of the activities to be funded, and approve the amount of assessment on each lot."

*Fifth*, the ordinance required that defendant "shall enter into an agreement with the [Downtowners], for the Downtowners to administer the EID funds, provide for public meetings, budget adoption and consideration at open publicly noticed meetings, limitations on expenditures and other appropriate matters."

Consistently with the ordinance, defendant sent notices to affected property owners, including plaintiffs, concerning the December 7 hearing. Those notices indicated that "[t]he purpose of the second hearing is to allow property owners to file written remonstrances (also referred to as objections) with the City regarding their proposed assessment."

At the December 7 hearing, defendant considered the objections to the proposed assessments and determined that the cost of the improvements had been properly apportioned. Following that hearing and consistently with the procedure outlined in the ordinance, defendant adopted Resolution No. 2546 (the resolution), which was entitled "resolution of assessment." (Capitalization omitted.) Noting that the EID had been created in the ordinance and that "the City Council [had] considered the proposed assessment and objections thereto" at the December 7 hearing, the resolution provided that (1) based on an attached listing of property owners that included plaintiffs, "the following assessments against property in the Bend Downtown Economic Improvement District shall be made" and (2) those assessments "shall be entered into the City of Bend lien docket records."[2] Defendant

---

[2] The attached list included over 100 entries based on tax lot identification numbers with individual assessments ranging from $133.65 to $5,271.42.

then sent each affected property owner an invoice concerning the assessment.

Thereafter, in February 2006, plaintiffs filed a complaint against defendant, seeking declaratory and injunctive relief. In general terms, that complaint alleged that the ordinance failed to comply with the pertinent statutes governing EIDs, ORS 223.112 to 223.132, in several particulars. More specifically, plaintiffs alleged that the ordinance failed to sufficiently describe the boundaries of the EID; that the ordinance failed to sufficiently describe the "particular or specific economic improvement to be developed or performed"; that the ordinance perpetrated an unlawful delegation of governmental functions to the Downtowners; and that the ordinance

> "arbitrarily purports to assess all real property within the district at 11 cents per square foot per year, without identifying any economic improvement, or the cost of any economic improvement, or determining any special benefit to any property, and without any formula for apportioning the cost to such specially benefitted property."

Ultimately, plaintiffs requested that

> "the court declare that City Ordinance NS-1985 is null and void and unenforceable, City Resolution No. 2546 is null, void and unenforceable, the economic improvement district purportedly created thereunder does not exist, and further declaring that the City of Bend is enjoin[ed] from attempting to levy and collect any assessments under Ordinance NS-1985 and Resolution No. 2546[.]"[3]

Defendant moved to dismiss the case, contending that defendant's creation of the EID could be challenged only by seeking a writ of review within 60 days from the date of the decision. *See* ORS 34.010 - 34.102 (providing generally for a writ of review as the exclusive remedy to challenge quasi-judicial decisions). According to defendant, because plaintiffs filed an action seeking declaratory and injunctive relief and

---

[3] Plaintiffs' assertion that the resolution, as well as the ordinance, was "null, void and unenforceable" was entirely derivative of their challenge to the validity of the predicate ordinance. That is, plaintiffs did not assert that, even if the ordinance complied with the statutory requirements, the resolution was somehow independently invalid and unenforceable.

did not seek to challenge the creation of the EID through the writ of review process within 60 days of the date of the decision, the trial court lacked subject matter jurisdiction.

The trial court granted in part the motion to dismiss. The court determined that "the City of Bend's decisions pertaining to the physical boundaries of the EID and the calculation of individual assessments were quasi judicial decisions" and dismissed "all allegations in Plaintiffs' complaint pertaining to quasi judicial decisions of the City of Bend." Conversely, the court denied defendant's motion to dismiss "to the extent that it pertains to legislative decisions of the City in connection with the [EID]." Accordingly, the court ordered plaintiffs to file an amended complaint omitting allegations pertaining to defendant's quasi-judicial decisions.

Thereafter, plaintiffs amended their complaint twice. The operative complaint ultimately alleged that "[t]he Ordinance fails to comply with the mandatory requirement of the * * * statutes and exceeds the City's statutory authority[.]"[4] As pertinent to this appeal, plaintiffs specifically alleged:

"A. ORS 223.117(1)(a) directs that the Ordinance must '[describe] the economic improvement project to be undertaken or constructed.' * * * Contrary to this statutory requirement, the Ordinance fails to describe a particular economic improvement project. Instead, the Ordinance simply recites the generic list of potential economic improvements comprising the definition of 'economic improvement' set forth in ORS 223.112(2), and states that the EID is created for the purpose of promoting some or all of these improvements.

"* * * * *

"C. ORS 223.117(2)([b]) states that an ordinance creating an Economic Improvement District shall '[r]equire the city recorder or other person designated by the city council to prepare the proposed assessment for each lot in

_____

[4] Plaintiffs also alleged that "the ordinance and assessments constitute an unlawful taking of property without just compensation, in violation of the Oregon and United States Constitutions." The trial court dismissed that allegation as being "without merit." The trial court's determination in that regard is not at issue on appeal.

the district and file it in the appropriate city office.' The Ordinance fails to contain this requirement."

(Emphasis omitted; first and third brackets in original.)

Plaintiffs and defendant filed cross-motions for summary judgment that raised the same legal issue—*viz.*, whether defendant's ordinance satisfied the statutory requisites of ORS 223.117 such that it was a valid enactment. Plaintiffs asserted that, "when state law imposes specific, mandatory requirements for the enactment of local legislation, those requirements must be satisfied" and, thus, because defendant did not strictly comply with the statutory requisites of ORS 223.117, including ORS 223.117(1)(a) and (2)(b), the ordinance was invalid. Plaintiffs further contended that, because the ordinance was invalid, it followed that "the Resolution is also invalid, and the City has no authority to levy or collect assessments for the benefit of the [EID]."

Defendant, on the other hand, asserted that the ordinance was valid. In that regard, defendant noted that "Oregon Cities have 'home rule' powers under the Oregon Constitution" and posited that, "[i]n order for an ordinance to be invalid, in light of a city's home rule authority, the ordinance must actually contravene a state statute, or substantially interfere with state legislation in an area where the state has indicated an intention to preclude municipal legislation on the same subject." Here, defendant contended that "the complaint fails to allege that the ordinance is inconsistent with state law in any material respect," and, thus, because there was at least substantial compliance with the requisites of ORS 223.117, the ordinance was valid.

The trial court granted plaintiffs' motion for summary judgment and denied defendant's cross-motion. The court assumed that "strict compliance is not required, even for taxation or assessment ordinances" and reasoned that "the court will determine if the City even substantially complied with the statutory procedures to create an EID and impose assessments." The court ultimately determined that the ordinance did not satisfy even the "substantial compliance" standard, because it did not describe the economic improvement project as required by ORS 223.117(1)(a). In that regard, the court reasoned that,

"most fundamentally, the ordinance provides absolutely no notice to affected landowners of what the City proposes to assess them for. Because there is no explanation of how the assessment will be used, the property owners cannot evaluate whether the 'project(s)' are necessary or unnecessary, beneficial to their property or not, or even harmful, and whether the estimated cost is reasonable for the expected return. Clearly the statutory requirement for specificity is basic to the function of giving notice."

The trial court further noted that several of plaintiffs' other allegations had merit because they were "closely related" to defendant's failure to describe the economic improvement project and that several of plaintiffs' "[o]ther claims of procedural irregularity[, including plaintiffs' allegation that the ordinance violated ORS 223.117(2)(b),] are without merit because the City substantially met the requirements of the statutes." In sum, the court stated that its determination concerning the failure to comply with ORS 223.117(1)(a) was "dispositive" and that "[n]o further discussion of plaintiffs' other claims is necessary."

Accordingly, the court entered a general judgment that provides, in part, as follows:

"1.   City of Bend Ordinance NS-1985 is declared null, void and unenforceable;

"2.   City of Bend Resolution No. 2546 is declared null, void and unenforceable;

"3.   The City of Bend is permanently enjoined from attempting to levy or collect any assessment under Ordinance NS-1985 or Resolution No. 2546[.]"

Defendant appealed.

On appeal, defendant raises two assignments of error. First, defendant contends that the trial court erred in denying its motion to dismiss for lack of jurisdiction because "writ of review is the exclusive avenue to challenge a special improvement district where the formation is a quasi judicial function of the city council." Second, defendant asserts that the trial court erred in granting plaintiffs' motion for summary judgment and denying its cross-motion, because the

ordinance either completely or substantially complied with the requirements of ORS 223.117.

Plaintiffs remonstrate that the creation of the district was a legislative act and, thus, that they were entitled to challenge the validity of the ordinance in a declaratory judgment proceeding. With respect to the second assignment of error pertaining to the disposition on summary judgment, plaintiffs contend that, regardless of defendant's home rule authority, defendant was required to strictly comply with the pertinent statutory requirements. For that reason, the ordinance in this case was invalid either because, as the trial court concluded, defendant did not satisfy ORS 223.117(1)(a) (the requirement that the assessment ordinance contain a description of the economic improvement project) or because defendant did not satisfy ORS 223.117(2)(b) (the requirement that the city recorder or other designated individual prepare the assessments and file them in the appropriate city office).

Before addressing and resolving the parties' particular contentions, it is useful to place them in statutory context. ORS 223.114 and ORS 223.117, the statutes concerning the procedure for imposing assessments on property owners for the cost of an improvement project, are most pertinent.

ORS 223.114(1) provides that "[a] council may enact an ordinance establishing a procedure to be followed by the city in making assessments for the cost of an economic improvement upon the lots which are specially benefited by all or part of the improvement." *See also* ORS 223.114(2) (providing, *inter alia*, that a city is not authorized to "[i]nclude within an economic improvement district any area * * * that is not zoned for commercial or industrial use" or "[l]evy assessments on residential real property or any portion of a structure used for residential purposes").

ORS 223.117(1) requires that an "assessment ordinance" include certain information and procedures. That statute provides:

"(1)  An ordinance adopted under ORS 223.114, shall provide for enactment of an assessment ordinance that:

"(a) Describes the economic improvement project to be undertaken or constructed.

"(b) Contains a preliminary estimate of the probable cost of the economic improvement and the proposed formula for apportioning cost to specially benefited property.

"(c) Describes the boundaries of the district in which property will be assessed.

"(d) Specifies the number of years, to a maximum of five, in which assessments will be levied.

"(e) Contains provision for notices to be mailed or delivered personally to affected property owners that announce the intention of the council to construct or undertake the economic improvement project and to assess benefited property for a part or all of the cost. The notice shall state the time and place of the public hearing required under paragraph (f) of this subsection.

"(f) Provides for a hearing not sooner than 30 days after the mailing or delivery of notices to affected property owners at which the owners may appear to support or object to the proposed improvement and assessment.

"(2) The ordinance shall also:

"(a) Provide that if, after the hearing held under subsection (1)(f) of this section, the council determines that the economic improvement shall be made, the council shall determine whether the property benefited shall bear all or a portion of the cost and shall determine, based on the actual or estimated cost of the economic improvement, the amount of assessment on each lot in the district.

"(b) Require the city recorder or other person designated by the council to prepare the proposed assessment for each lot in the district and file it in the appropriate city office.

"(c) Require notice of such proposed assessment to be mailed or personally delivered to the owner of each lot to be assessed, which notice shall state the amount of the assessment proposed on the property of the owner receiving the notice. The notice shall state the time and place of a public hearing at which affected property owners may appear to support or object to the proposed assessment. The hearing

shall not be held sooner than 30 days after the mailing or personal delivery of the notices.

"(d)   Provide that the council shall consider such objections and may adopt, correct, modify or revise the proposed assessments.

"(e)   Provide that the assessments will not be made and the economic improvement project terminated when written objections are received at the public hearing from owners of property upon which more than 33 percent of the total amount of assessments is levied."

In sum, ORS 223.114 and ORS 223.117, individually and collectively, require the establishment of *general criteria and procedures* for the imposition of assessments to fund the cost of an improvement project and require that a city's "assessment ordinance" comport with mandatory requirements concerning its content.[5]

Against that statutory backdrop, we consider the first assignment of error, *viz.*, that the trial court erred in denying defendant's motion to dismiss plaintiffs' declaratory judgment action for lack of jurisdiction because a writ of review was plaintiffs' exclusive remedy. *See generally Parker v. City of Albany*, 208 Or App 296, 298, 144 P3d 976 (2006)

---

[5] The text of ORS 223.114 and ORS 223.117 could be understood to require that a city council enact more than one ordinance—that is, (1) an ordinance under ORS 223.114 that establishes the procedure to be followed in making assessments and, in doing so, provides for the enactment of an "assessment ordinance" and (2) a separate "assessment ordinance," which must satisfy the requisites of ORS 223.117. However, as a matter of text and statutory context, ORS 223.114 and ORS 223.117 could also be understood to require the enactment of a single "assessment ordinance" that explains the procedures that the city will follow in making assessments. *See* ORS 223.118(1) (referring to "an assessment ordinance adopted under *ORS 223.114* and 223.117" (emphasis added)). *Compare* ORS 223.129 (indicating that a city shall not expend moneys derived from assessments "for any purpose different from the purpose described in the ordinance adopted under *ORS 223.114*" (emphasis added)), *with* ORS 223.114 (which does not refer to a description of the purpose of an economic improvement), *and* ORS 223.117(1)(a) (providing that an "assessment ordinance" describe the "economic improvement project to be undertaken or constructed").

We need not resolve that question in this case because plaintiffs never contended that defendant had violated statutory requirements by enacting one ordinance rather than two separate ordinances. Indeed, on appeal the parties do not dispute that a single ordinance could satisfy the requirements of both ORS 223.114 and ORS 223.117. Rather, their sole contention has been that the ordinance here did not satisfy the requirements of ORS 223.117.

(providing that we review the trial court's jurisdictional determination for errors of law). As support for its position, defendant invokes *State ex rel City of Powers v. Coos County Airport*, 201 Or App 222, 228-29, 119 P3d 225 (2005), *rev den*, 341 Or 197 (2006). Defendant particularly emphasizes our observations in *Coos County Airport* that, (1) "although a trial court has broad power to provide declaratory relief, it lacks subject matter jurisdiction under ORS 28.010 if some other exclusive remedy exists"; and (2) "when the writ of review is available, it is the exclusive remedy and * * * a court lacks jurisdiction over a declaratory judgment action that seeks review of governmental actions that are subject to review by writ of review." 201 Or App at 228-29, 230 (internal quotation marks, bracketed material, and emphasis omitted).

■       The striking point of our jurisdictional analysis here, as in *Coos County Airport*, is ORS 34.102. That statute provides, in part, that

> "the decisions of the governing body of a municipal corporation acting in a judicial or quasi-judicial capacity and made in the transaction of municipal corporation business shall be reviewed only as provided in ORS 34.010 to 34.100[, the statutes governing writs of review,] and not otherwise."

Thus, in determining whether the exclusive jurisdiction prescribed in ORS 34.102 precludes a declaratory judgment action, the court must first identify the challenged "decision" and then determine whether, in making that decision, the governing body was acting in a "quasi-judicial capacity." Consequently, the identification of the operative "decision" and its content circumscribes the jurisdictional inquiry and may determine its outcome.

Here, the object of plaintiffs' challenges, as ultimately framed by the operative complaint, was the ordinance. To be sure, that complaint also asserted that the resolution was invalid—but, as noted, *see* 231 Or App at 168 n 3, that challenge was entirely derivative of plaintiffs' allegations that the predicate ordinance failed to meet statutory requirements prescribed by ORS 223.117. As narrowed following the trial court's partial allowance of defendant's

motion to dismiss, *see* 231 Or App at 169, plaintiffs' challenge to the ordinance pertained to two principal decisions embodied in the ordinance: (1) the formation of the EID and (2) the establishment of general criteria and procedures for imposing assessments.[6] For jurisdictional purposes, our inquiry reduces to whether those decisions were "quasi-judicial" in nature and, thus, subject to challenge only by writ of review.

*Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 91 P3d 748 (2004), frames that inquiry. There, relying on the Supreme Court's analysis in *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979) (*Strawberry Hill*), we described the considerations that bear on whether a governmental action represented an exercise of its quasi-judicial functions. Noting that a policymaking process does not become an adjudicatory process simply because it is circumscribed by procedural requirements such as public hearings, we explained that

"at least three other considerations generally bear on the determination of whether governmental action represented an 'exercise of * * * quasi-judicial functions.' ORS 34.040(1). First, does 'the process, once begun, [call] for reaching a decision,' with that decision being confined by preexisting criteria rather than a wide discretionary choice of action or inaction? [*Strawberry Hill*], 287 Or at 604. Second, to what extent is the decision-maker 'bound to apply preexisting criteria to concrete facts'? *Id.* at 602-03. Third, to what extent is the decision 'directed at a closely circumscribed factual situation or a relatively small number of persons'? *Id.* at 603."

*Hood River Valley*, 193 Or App at 495 (omission and first brackets in *Hood River Valley*).

Further, and critically, as we explained in *Babcock v. Sherwood School District 88J*, 193 Or App 449, 453, 90 P3d

---

[6] The enactment of general criteria and procedures for imposing assessments is distinct from the individualized application of those criteria and procedures with respect to individual properties. As noted, in response to defendant's motion to dismiss, the trial court dismissed plaintiffs' allegations (in their original complaint) challenging "decisions pertaining to * * * the calculation of individual assessments." *See* 231 Or App at 169. Plaintiffs have not challenged that partial dismissal.

1036, *rev den*, 337 Or 556 (2004), the *Strawberry Hill* formulation "was never intended to serve as a complete, all-purpose list of 'elements,' all of which must be present in order to label an action quasi-adjudication * * *." Rather,

> "the traits are manifestations of the fundamental, structural difference between what courts do and what legislative bodies do. Generally, courts are institutions empowered to deploy processes like evidentiary hearings and cross-examination in order disinterestedly and rationally to solve concrete disputes between parties as to whether and how particular events did or did not occur and whether they amount to transgressions of preexisting legal norms. Their decisions attain legitimacy by demonstrating a rational connection among the norms, the evidence on the record, and the outcome. Once presented with a justiciable controversy, courts are not free to ignore it; the parties cannot be told to go away because the judges would prefer to devote their energy and resources to more (or less) pressing problems. Legislative bodies, on the other hand, choose from among competing policy preferences. They are not bound to any record. They are held accountable not by the constraints of logic or rules of evidence, but by politics, and a legislature is never required to make a decision."

*Babcock*, 193 Or App at 453-54 (internal quotation marks and bracketed material omitted). *Accord Hood River Valley*, 193 Or App at 495 (noting "that the [*Strawberry Hill*] criteria are applied in light of the reasons for their existence—*viz.*, the assurance of correct factual decisions and the assurance of fair attention to individuals particularly affected" (internal quotation marks omitted)). Thus, keeping in mind that our task is to determine the fundamental character of the process that yielded the decisions at issue, we begin by examining the nonexclusive *Strawberry Hill* factors as amplified in *Hood River Valley*.[7]

---

[7] Although ORS 223.117 requires that an assessment ordinance provide for notice and public hearings, as we noted in *Hood River Valley*, a policy-making process does not become an adjudicatory process simply because it is circumscribed by procedural requirements such as public hearings. For that reason, the focus of our analysis is on the three considerations that we identified in *Hood River Valley* as generally bearing on the determination whether a decision is quasi-judicial in nature. *See also Coos County Airport*, 201 Or App at 238-39 (" '[N]othing prevents a law or charter from imposing detailed procedural safeguards such as notice, prior inquiries and reports, and public hearings on a process of *legislative* policymaking.' " (Quoting *Strawberry Hill*, 287 Or at 604.) (Emphasis in *Coos County*.)).

■ The first consideration is whether "the process, once begun, calls for reaching a decision," with that decision being confined to preexisting criteria rather than allowing for the "discretionary choice of action or inaction." *Strawberry Hill*, 287 Or at 604. Here, the process that culminated in the enactment of the ordinance, embodying the decisions to create the EID and to adopt criteria and procedures for imposing assessments, was discretionary—not mandatory or circumscribed by preexisting criteria. Until it enacted the ordinance, defendant retained an unconstrained legislative range of "choice of action or inaction." *Id. See generally Stanley v. City of Salem*, 247 Or 60, 64, 427 P2d 406 (1967) ("The power to determine that an improvement is to be made and that a tax will be imposed to pay for the improvement is strictly legislative, i.e., for the city council.").

Specifically, in this case, it appears that the Downtowners requested that defendant create the EID and that defendant had complete discretion concerning whether to proceed with the proposal. We are aware of no duty that required defendant, once it received the request from the association, to create the EID or establish the procedure for imposing assessments on affected property owners. In that respect, this case is materially distinguishable from *Hood River Valley* and *Coos County Airport*.

In *Hood River Valley*, for example, the county entered into a preliminary agreement with Mt. Hood Meadows to exchange property. According to the agreement, the exchange was subject to the satisfaction of certain conditions, including compliance with ORS 275.335, the statute governing particular types of land exchanges. We held that, although "the county was not required to enter into the initial agreement with Mt. Hood Meadows, once it did so, it was ultimately bound to reach a decision as to whether the contractual and statutory conditions for the exchange had been satisfied and, thus, whether the exchange should actually be consummated." *Hood River Valley*, 193 Or App at 497.

Similarly, in *Coos County Airport*, the city of North Bend passed a resolution that called for the formation of an airport district to fund the operation of its airport and filed

that resolution with the county. We held that, once the city presented its resolution to the county, under the pertinent statutory scheme, "the county lacked the option of taking no action at all on North Bend's request to form the airport district." *Coos County Airport*, 201 Or App at 239.

Again, here, in dispositive contrast to *Hood River Valley* and *Coos County Airport*, defendant has not identified any agreement or statute that required it to create the district and establish the criteria and procedures for imposing assessments once it received the request from the Downtowners. Again, in further contrast to those cases, until it enacted the ordinance, defendant here retained the unconstrained legislative range of "choice of action or inaction." *Strawberry Hill*, 287 Or at 604.

■ The second consideration concerns the extent to which the decision-maker is "bound to apply preexisting criteria to concrete facts." *Strawberry Hill*, 287 Or at 602-03. In that regard, defendant argues that "[t]he criteria are set forth in ORS 223.112 through 223.118. [Defendant] was bound to follow these criteria, and indeed, it did so, making findings of fact regarding the criteria at each step of the process."

Defendant is correct that those statutes generally, and ORS 223.117 specifically, require that an "assessment ordinance" *include* particular types of information. However, there is a qualitative difference between enacting an ordinance that includes statutorily prescribed provisions and applying preexisting criteria to particular circumstances, akin to judicial factfinding. Indeed, in enacting the ordinance, defendant was engaged in a process to establish the general criteria that it could eventually apply in levying assessments—a process that would, in fact, involve the application of those criteria to the concrete factual circumstances of individual property owners—at a later time.

■ The third, and final, consideration in determining whether a decision is quasi-judicial in nature concerns the extent to which the decision is "directed at a closely circumscribed factual situation or a relatively small number of persons." *Strawberry Hill*, 287 Or at 603. Defendant contends that this consideration is self-evidently present here because

"[t]he district was limited to the downtown area, thus satisfying the requirement that the district be directed to only those properties within the boundaries established by [the ordinance] and [resolution]."

Defendant is correct—but only to a point. Although the primary benefit of the establishment of the EID may well inure to owners of nonresidential properties and business proprietors within the district, it is by no means self-evident that those are the only persons who will be affected by the decision; indeed, that decision may well pervasively, albeit collaterally, affect the citizens of Bend as a whole. *Cf. Stanley*, 247 Or at 65 (noting that the fact that an improvement benefits the public generally "does not of itself overcome the presumption that the council was correct in determining that the adjoining property was specially benefited"). In all events, as we reiterated in *Coos County Airport*, the number of people affected and the size of the area affected are "less important" than the other *Strawberry Hill* considerations. 201 Or App at 241 (internal quotation marks omitted).

We return then to the fundamental inquiry: Bearing in mind "the fundamental, structural difference between what courts do and what legislative bodies do," *Babcock*, 193 Or App at 453, were defendant's decisions to form the EID and to prescribe general procedures and criteria for the imposition and challenging of individual assessments quasi-judicial or legislative in character? Although at least one consideration, *viz.*, the relatively small number of persons directly affected by the decision, militates in favor of a quasi-judicial characterization, on balance we conclude that defendant's operative decisions were legislative. Those decisions to form the EID and to establish general criteria and procedures did not ultimately implicate the safeguards that underlie adjudicatory processes—that is, "to help assure that the decision is correct as to facts" and "to help assure fair attention to individuals particularly affected." *Strawberry Hill*, 287 Or at 603. Accordingly, plaintiffs properly asserted their challenge to the ordinance in a declaratory judgment action rather than by writ of review.

Specifically, as noted—and unlike in *Coos County Airport* and *Hood River Valley*—there is no indication here

that the pertinent statutes or any other agreement required defendant, on petition or application, to create the EID and to establish criteria and procedures for imposing assessments. Further, those decisions, pertaining to the formation and overarching funding process for the EID, were not the product of some particularized application of preexisting criteria to concrete facts; rather, as we have explained, the ordinance embodied generalized policy-driven determinations. Bluntly: Although the ensuing resolution fixing and imposing individual assessments on the specific properties was quasi-judicial in character, the decisions underlying and embodied in the predicate ordinance were innately legislative.

In sum, the focus of plaintiffs' declaratory judgment action was the ordinance, not the resolution, with the latter being derivative of the former. The ordinance, as ultimately challenged, embodied, and was the product of, legislative, not quasi-judicial decisions.[8] Because writ of review was not plaintiffs' exclusive remedy, the trial court correctly concluded that it had jurisdiction over plaintiffs' declaratory judgment action.[9]

---

[8] Defendant relies on *School District No. 3J v. City of Wilsonville*, 87 Or App 246, 742 P2d 59, *rev den*, 304 Or 548 (1987), as illustrative in support of its contention that "there are quasi judicial actions that are fundamental to the creation of a special improvement district, so that it is not 'purely' legislative." That reliance is unavailing.

In *School District No. 3J*, a case in which ORS 223.401 and ORS 34.040 provided for a remedy by writ of review, we held that "the process of determining [local improvement district] boundaries is sufficiently related to the process of determining which properties have benefited from an improvement to justify its characterization as quasi-judicial and to subject it to review by writ of review." 87 Or App at 250. *School District No. 3J* is inapposite for two reasons. First, as we explain below in footnote 9, ORS 223.401 does not apply in these circumstances. Second, unlike in *School District No. 3J*, no issue is presented here concerning defendant's determination of the EID's boundaries.

[9] We also reject, without extended discussion, defendant's alternative argument that, under ORS 223.401, writ of review is the exclusive process for challenging the creation of an EID. That statute, which concerns local improvements, provides: "Notwithstanding [other statutes governing assessments for local improvements], owners of any property against which an assessment for local improvements has been imposed may seek a review thereof under the provisions of ORS 34.010 to 34.100." That statute and the cases concerning the review of a city's decisions involving local improvement districts, *see, e.g., McKenney v. Lake Oswego*, 30 Or App 913, 569 P2d 27 (1977), *rev den*, 281 Or 1 (1978), are inapplicable to this case involving an economic improvement district because, although the legislature has provided that certain statutes related to local improvements apply to economic improvement districts, ORS 223.401 is not included among those

We proceed to the second assignment of error, which challenges the trial court's allowance of plaintiffs' motion for summary judgment and its concomitant denial of defendant's cross-motion. As noted, *see* 231 Or App at 170, the trial court granted summary judgment on the ground that defendant had failed to comply with ORS 223.117(1)(a) because the ordinance did not sufficiently describe "the economic improvement *project* to be undertaken or constructed." (Emphasis added.) On appeal, defendant's arguments focus on the trial court's definition of the word "project": *First,* defendant contends that, by defining the word "project" such that the ordinance in this case failed to satisfy ORS 223.117(1)(a), the trial court disregarded the presumptions of validity that attach to municipal ordinances. *See generally* Eugene McQuillin, *The Law of Municipal Corporations* (3d ed 2007). *Second,* defendant contends that, in declaring the ordinance invalid based on its failure to satisfy ORS 223.117(1)(a), the court disregarded defendant's additional authority, apart from the statutes governing EIDs, to create and finance those districts. *See* ORS 223.132 (providing that "[t]he authority granted to cities by ORS 223.112 to 223.132, is in addition to any other authority a city may have under state law, its charter or its ordinances to create or finance economic improvement districts"). *See also* Or Const, Art XI, § 2 (concerning home rule authority); Or Const, Art IV, § 1(5) (same).

Plaintiffs defend the merits of the trial court's ruling, and also advance an alternative basis for affirmance. Specifically, plaintiffs contend that the ordinance completely failed to comport with ORS 223.117(2)(b). *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (discussing "right for the wrong reason" principle for affirming trial court's ruling).

In response to that alternative contention, defendant asserts that the ordinance "designate[d] the city clerk as the person to *send* the assessments to the affected property owners" and that that provision of the ordinance "[c]learly

statutes. *See* ORS 223.127(1) (providing that "ORS 223.387 and 223.391 to 223.395 apply to economic improvement districts created by a city in accordance with ORS 223.112 to 223.132"). In all events, ORS 223.401 applies to review of an imposed assessment and not to the creation of a local district.

implied * * * the obligation of the city clerk to see to it that the assessments were prepared * * *." (Emphasis added.) Further, defendant asserts that, because it had authorized the downtown association to "administer the EID, consistent[ly] with ORS 223.119,"[10] the fact that a representative of the association gathered "preliminary assessment information" was an appropriate delegation of its authority. Defendant summarizes its position as follows:

> "Because an EID is a self taxing district, it is only natural that the city would cooperate with the association of affected property owners in its creation. The question in this case is: Did the city act in *substantial compliance* with the relevant statutes in creating the EID? The answer is that it did."

(Emphasis added.)

■ We do not address defendant's challenge to the trial court's grounds for allowing summary judgment—and, specifically, we do not resolve whether, as a matter of law, the ordinance was invalid because it failed to comply with ORS 223.117(1)(a), which required that the ordinance describe "the economic improvement project to be undertaken or constructed." Instead, we affirm on the alternative basis that the ordinance was invalid because, regardless of any compliance with ORS 223.117(1)(a), it completely failed to comply with the requirements of ORS 223.117(2)(b). *See Parthenon Construction & Design, Inc. v. Neuman*, 166 Or App 172, 181, 999 P2d 1169 (2000) (reasoning that "[n]oncompliance is not 'substantial compliance' ").

ORS 223.117(2)(b) requires that the "assessment ordinance" shall

---

[10] ORS 223.119 provides:

"An ordinance adopted under ORS 223.114, may require creation, for each economic improvement district, of an advisory committee to allocate expenditure of moneys for economic improvement activities within the scope of ORS 223.112 to 223.132. If an advisory committee is created, the council shall strongly consider appointment of owners of property within the economic improvement district to the advisory committee. An existing association of property owners or tenants may enter into an agreement with the city to provide the proposed economic improvement."

> "[r]equire the city recorder or other person designated by the council to *prepare the proposed assessment* for each lot in the district and *file it in the appropriate city office.*"

(Emphasis added.) The ordinance, in turn, stated, in pertinent part, that

> "[t]he City Clerk shall promptly mail to property owners within the boundaries of the [EID], a notice identifying the amount of the proposed assessment for each property, and informing the property owner of a meeting scheduled for December 7, 2005, at which the property owners may appear to submit written objections to the assessment."

Nothing in the text of the ordinance requires the "city recorder or other person designated by the council" to "prepare the proposed assessment" or to "file [the proposed assessment] in the appropriate city office[,]" as ORS 223.117(2)(b) requires. Rather, the ordinance simply states that the city clerk "shall promptly *mail*" (emphasis added) notices of proposed assessments, without any reference to responsibility for *preparing* the notices. Further, the ordinance does not refer at all to the *filing* of the proposed assessments.[11] Consequently, the ordinance is invalid because it does not comport even "substantially" with the requirements of ORS 223.117(2)(b).

The trial court did not err in granting plaintiffs' motion for summary judgment and denying defendant's motion.

Affirmed.

---

[11] We note that the resolution indicates that "[t]he above assessments shall be entered into [defendant's] lien docket records," but the ordinance does not.