Argued and submitted May 6, reversed and remanded July 28, 2010

## In the Matter of A. J.,
### a Child.

## DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

## M. J.,
*Appellant.*

Washington County Circuit Court
J090105; Petition Number 01J090105;
A144127

236 P3d 795

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan,

Chief Defender, Appellant Division, Office of Public Defense Services.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

ORTEGA, J.

## ORTEGA, J.

Father appeals a final order in which the juvenile court continued father's daughter, A, in the legal custody of the Department of Human Services (DHS). On appeal, the dispute concerns the applicability of the Refugee Child Welfare Act (RCWA), ORS 418.925 - 418.945, which imposes heightened standards in cases involving a "refugee child." Father contends that the juvenile court misconstrued ORS 418.925, which defines "refugee child," and thus erroneously concluded that the RCWA did not apply. We agree and therefore reverse and remand.

The following facts do not appear to be in dispute. A was born in Somalia in 1993. Father arrived in the United States in November 2000. According to an affidavit submitted by father, the family entered the United States in 2000 "as refugees" after "fle[eing] from Somalia for fear of persecution, injury and death."

In March 2009, DHS removed A from her home. In response to DHS's petition, father pleaded no contest to allegations that he "has a history of assaultive behavior which places [A] in threat of harm"; A "has reported being physically abused by father"; father "has threatened physical injury to [A]"; and "the State of Ohio found that father caused physical injury to [A's] sibling, resulting in placement of [A] and siblings in substitute care."

During a subsequent hearing, the state acknowledged that A probably was a "refugee child" under the RCWA. In the order arising from that hearing, the juvenile court found A to be a refugee child as defined by ORS 418.925. DHS filed an amended petition alleging that A "appear[ed] to be a refugee child as defined in ORS 418.925" and that DHS had complied with placement preferences and taken other steps in compliance with the RCWA.[1]

---

[1] ORS 418.927(1) prohibits DHS from removing a refugee child from the child's home unless, in addition to other requirements of the juvenile code, "removal is necessary to prevent imminent serious emotional or physical harm to the child and the provision of preventative or remedial services do not alleviate the harm." Heightened standards also apply to DHS's petition to the court after a refugee child's removal, ORS 418.930, and to situations in which a refugee child remains out of the child's home for longer than five days, ORS 418.933.

At a November 13 hearing, father testified that he had become a U.S. citizen about two months before the hearing, that mother had become a citizen about three years earlier, and that A is not a citizen and the paperwork for her citizenship had not yet been filed. The record indicates that A already is a permanent resident of the United States. In response to questions about whether he could return to Somalia, father answered as follows:

"[Father:]  If it's peaceful there, I would return to Somalia.

"[Attorney for the State:]  Is there any legal, or other reason that you could not return to Somalia?

"[Father:]  It's not peaceful right now.

"[Attorney for the State:]  [Father], listen to my question, please. Is there any legal reason you could not return to Somalia now?

"[Father:]  I can—there's no place in the world I will be denied. I can go anywhere."

The state then ended its examination of father and argued that the RCWA did not apply, because father and mother had become U.S. citizens and father testified that there was no reason that he could not go to Somalia. Father's counsel observed that he had "never heard an argument that Somalia is a stable country"; the court responded, "That is an argument you do not need to make." The focus of the hearing became the proper construction of ORS 418.925, defining "refugee child."

The juvenile court requested further briefing. At a later hearing, the state argued that, because of A's parents' citizenship and because A could not be deported, "she does not have, nor would her parents have, a well-founded fear of persecution." Father responded that the statute defining "refugee child" contains no reference to deportation. Concluding that father's and mother's U.S. citizenship and A's likely qualification for U.S. citizenship rendered the RCWA inapplicable, the juvenile court changed its earlier ruling and determined that A is not a refugee child. The court entered an order finding, among other things, that DHS had made reasonable efforts to prevent or eliminate the need for A's

removal and to make it possible for A to safely return home. Father appealed.

■     On appeal, the parties continue to dispute whether A is a "refugee child" and, consequently, whether the RCWA applies to this case. In construing a statute, we attempt to discern the legislature's intent. The first step in doing so is consideration of the statutory text and context, followed by consideration of any legislative history that is proffered by a party and that we find useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 418.925 defines "refugee child":

> "As used in ORS 418.925 to 418.945, 'refugee child' is a person under 18 years of age who has entered the United States and is unwilling or unable to return to the person's country because of persecution or a well-founded fear of persecution on account of race, religion, sex, sexual orientation, nationality, membership in a particular group or political opinion, or whose parents entered the United States within the preceding 10 years and are or were unwilling or unable to return to their country because of persecution or a well-founded fear of persecution on account of race, religion, sex, sexual orientation, nationality, membership in a particular group or political opinion."

Here, it is undisputed that A is a person under 18 years of age who has entered the United States and that her parents entered the United States within the preceding 10 years. The parties' dispute focuses on the applicability of the provision that A's parents "are or were unwilling or unable to return to their country because of persecution or a well-founded fear of persecution." Father argues that, under the plain meaning of ORS 418.925, the parents' citizenship and the risk of deportation are irrelevant. He contends that, regardless of whether he is able to return to Somalia, his unwillingness to return—either now or at the time that the family left Somalia—is sufficient to establish A's status as a "refugee child." The state responds that, because father and mother are U.S. citizens, "Somalia is no longer 'their country' " and the RCWA does not apply. In the alternative, the state argues, there was no evidence that father or mother had been or would be persecuted in Somalia or had a well-founded fear of persecution.

We begin with the state's argument that A's parents' citizenship affects the applicability of the RCWA. That argument is not well taken. ORS 418.925 makes no reference to immigration status as part of the definition of "refugee child," and we cannot insert such a term into the statute. ORS 174.010. ORS 418.925 focuses instead on a child's parents' date of entry into the United States and their unwillingness or inability "to return to their country." In context, "their country" refers to the parents' country of origin, which is not necessarily the country of which the parents are citizens. ORS 418.925 juxtaposes "enter[ing]" and "return[ing]." It refers to a child who "has entered the United States" and parents who "entered the United States within the preceding 10 years." Given those references to entering the United States, the subsequent references to "return to the person's country" and "return to their country" logically refer to a place where the person was *before* entering the United States, that is, to the country of origin. Regardless of their present citizenship, A's parents' country of origin is Somalia, and that is "their country" for purposes of ORS 418.925. A's parents' U.S. citizenship, therefore, does not prevent A from being a "refugee child."

That reading of ORS 418.925 is consistent with the statutory context, which emphasizes awareness of a refugee child's cultural heritage and tradition, not immigration status. ORS 418.937 provides that, when making placement decisions involving a refugee child,

"the Department of Human Services and the juvenile court shall consider that child's *culture and tradition*. Unless shown to be inappropriate and inconsistent with the best interests of the child, the department and juvenile court shall place the child with the following in order of preference:

"(1)   Natural parents.

"(2)   Extended family members.

"(3)   Members of the same *cultural heritage*.

"(4)   Persons with knowledge and appreciation of the *cultural heritage of the child*."

(Emphasis added.) In addition, ORS 418.941(1) provides for the establishment of a Refugee Child Welfare Advisory Committee, which assists DHS in, among other things, "developing training programs to insure the availability of culturally sensitive social work," ORS 418.941(2)(c). Nothing in the RCWA suggests that the need for consideration of a refugee child's "cultural heritage" and for "culturally sensitive social work" changes as a result of change in citizenship status.

Nor does father's testimony that he "can go any-where" render the RCWA inapplicable. ORS 418.925 provides that a child is a "refugee child" if the child's parents "*are or were* unwilling or unable to return to their country because of persecution or a well-founded fear of persecution." (Emphasis added.) The statute is phrased in the disjunctive: a child is a "refugee child" if her parents (1) are *or* were (2) unwilling *or* unable to return to their country. Even if we assume that father does not *presently* meet the second set of circumstances—that is, if we assume that he now is both willing and able to return to Somalia—that assumption says nothing about whether he once *was* unwilling or unable to do so. No one has argued that that is the case, nor has anyone pointed us to anything in the record to contradict the affidavit testimony that the family "fled from Somalia for fear of persecution, injury and death."

■ We reject the state's proposed alternative basis for affirmance—namely, that the RCWA does not apply, because there was no evidence that father and mother had suffered persecution or a well-founded fear of persecution on account of one of the bases specified in ORS 418.925—because that argument was not made below and father might have created a different record had the argument been raised. Before the entry of the order at issue on appeal, the state had conceded that A probably was a refugee child, and the juvenile court had concluded that the RCWA applied. The arguments subsequently made to the juvenile court turned on the legal effect of the family's immigration status, not on factual questions concerning the reasons that the family left Somalia. Had the arguments below focused on that issue, the record might well have developed differently. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d

180 (2001) (explaining that, "if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance" (emphasis in original)).[2] On this record, the juvenile court erred by ruling that A is not a refugee child.

Reversed and remanded.

---

[2] In its brief, the state contends that, if A is a "refugee child," the requirements for her removal and placement were satisfied. At oral argument, however, the state acknowledged that the RCWA would have ongoing effects on the case if it did apply. In addition, under the RCWA, the juvenile court is required to make specific determinations by clear and convincing evidence if A is removed from her home for longer than five days, ORS 418.933(1), and no such findings were made in this case.