Argued and submitted December 3, 2021, affirmed January 26, 2022

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ZACHARIAH MICHAEL MEACHAM,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR77671, 17CR11648;
A173682 (Control), A173685

504 P3d 1275

In this consolidated criminal appeal, defendant assigns error to the trial court's denial of his motion to suppress. Defendant contends that the denial of the motion to suppress led to a conviction for driving while suspended, which in turn, led to defendant being found in violation of probation. Defendant argues that a deputy's initial encounter amounted to an unconstitutional stop, due, in part, to the deputy's error in identifying defendant as another person. *Held*: Although mistaken, the deputy reasonably suspected that defendant was the other person based on use of the same vehicle, a similar appearance between defendant and the other person's mug shot, and defendant's evasive behavior in the parking lot outside the store where defendant was contacted by the deputy. Even if the initial encounter constituted a stop, there was a sufficient basis for a stop. Therefore, the trial court did not err by denying the motion to suppress.

Affirmed.

Steffan Alexander, Judge. (Judgment entered February 20, 2020) (A173682)

Christopher J. Marshall, Judge. (Judgment entered February 14, 2020) (A173685)

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for felony driving while suspended (DWS) and a judgment finding him in violation of probation. He argues that an unconstitutional stop led to his DWS conviction, which in turn led to his being found in violation of probation. Because we conclude that the stop was constitutional, we affirm both judgments.

One afternoon, Multnomah County Deputy Sheriff Farmer was on patrol in a marked police car near NE 223rd and Glisan Streets, which he described as a "high vice area." While he was driving through a nearby Walgreens parking lot, he noticed an older silver Toyota Tercel enter the lot and drive towards him. As the two cars passed each other, the deputy and the other driver made eye contact. Once that occurred, the other driver "appeared to pick up speed and accelerate rapidly away from [the deputy] through the lot and then turn a corner *** out of [the deputy's] sight."

The deputy found the driver's behavior suspicious, and he "ran" the Tercel's license plate. In doing so, he learned that the same Tercel had been involved in a recent drug arrest and that there was an outstanding felony warrant for a person (Robert Long) who had either been driving the Tercel or a passenger in it when the drug arrest occurred.[1] The deputy "pulled up [Long's] mug shot," which led him to conclude that Long's mug shot "matched the guy who was driving the car."

The deputy turned his car around to follow the Tercel. After he turned the corner, he saw the Tercel "parked right in front of the Walgreens[,] right around the corner as if [the driver had] come around the corner [and] parked real quick." No one was in the car. However, the deputy spotted the driver inside the store and went in to speak with him. The deputy testified:

"I walked into the Walgreens. [The driver] was moving down an aisle and I just verbally addressed him, told him what was going on, that I thought he was this Robert Long

---

[1] The warrant for Long appears to have been issued for an unrelated felony.

guy, I thought he had a warrant. And then he provided me an identification card to show me who he was."[2]

The state identification card that the driver gave the deputy identified the driver as Zachariah Meacham, not Robert Long. However, the deputy testified that the driver's use of a state identification card was a giveaway that he did not have a valid driver's license, which led to the driver's (defendant's) arrest and prosecution for felony DWS.

Before trial, defendant moved to suppress "all evidence * * * discovered pursuant to an illegal search and seizure."[3] The next day, the state told the trial court that it was prepared to present evidence on defendant's motion, and the parties developed the record set out above. That record gave rise to three potential issues: (1) was the deputy's initial encounter with defendant in Walgreens a stop; (2) if it was, did the deputy reasonably suspect that defendant was Robert Long when he first spoke with him in Walgreens; and (3) if the deputy reasonably suspected that defendant was Long, did the deputy's reasonable suspicion dissipate once defendant produced identification showing he was someone else?

After the record had been created, the state addressed two of those issues. It argued that the deputy's initial interaction with defendant in Walgreens did not constitute a stop and that, when defendant offered his state identification in response to the deputy's questions, the deputy reasonably suspected that defendant had been driving

---

[2] Both the deputy and defendant testified at the suppression hearing regarding (1) what the deputy said to defendant when he spoke to him initially at Walgreens and (2) defendant's response. The deputy's testimony favored defendant on the first issue and the state on the second. Conversely, defendant's testimony favored the state on the first issue and the defense on the second. Although the trial court did not make express factual findings, it appears to have accepted the deputy's version on both issues. The parties appear to agree on that point, and we quote the deputy's version of both events.

[3] After oral argument, defendant filed a memorandum of additional authorities citing *State v. Oxford*, 287 Or App 580, 586, 403 P3d 528 (2017), for the proposition that his pretrial suppression motion was minimally sufficient to raise the issues that have been litigated at trial and on appeal. Perhaps that is true. The motion, however, could have been more helpful in framing the issues at the hearing by identifying, for example, the specific basis that, in defendant's view, rendered the deputy's stop unconstitutional. *See State v. Hallam*, 307 Or App 796, 800-01, 479 P3d 545 (2020) (discussing that issue).

without a valid license. The state did not argue that the deputy reasonably suspected that defendant was Long when he first approached him in Walgreens.[4]

Defense counsel addressed all three issues in her argument. She argued initially that, when the deputy went into Walgreens, "there [wa]s not sufficient information at this point to detain the person that was in the store based on how little information [the deputy had] gathered before deciding to go into the store and detain whoever this person was." She also argued that the deputy's initial interaction with defendant in Walgreens was sufficiently coercive that it constituted a stop without a sufficient justification. And she finally contended that, "even if there was reasonable suspicion" that defendant was Robert Long when the deputy first entered Walgreens, the deputy's suspicion "should have been diffused as soon as he saw [defendant's] work ID."[5]

The trial court agreed with the state that the deputy's initial interaction with defendant in Walgreens did not rise to the level of a stop and that a stop occurred only "after the officer learned that the Defendant—Defendant's license was suspended and then asked him to accompany the officer toward his patrol vehicle to check what level of suspension there was." At that point, the trial court reasoned, the deputy had a reasonable suspicion that defendant had been driving while suspended. The court accordingly denied defendant's motion to suppress. Afterwards, the court entered a judgment of conviction for felony DWS. Later, another judge relied on the felony DWS conviction to find that defendant had violated his probation on a separate offense.

On appeal, defendant assigns error to the trial court's ruling on his motion to suppress. He argues that

---

[4] The state did not expressly concede the point. It did not address it.

[5] The deputy and defendant's testimony differed on the type of identification that defendant initially produced. The deputy testified that defendant initially showed him a state identification, which he said indicated that defendant lacked a valid driver's license. Defendant testified that he initially showed the deputy a work identification, which his attorney argued both dissipated any reasonable suspicion that defendant was Long and, unlike a state identification, did not suggest that defendant lacked a driver's license. As noted above, the court appears to have accepted the deputy's testimony on that issue.

the trial court erroneously concluded that the deputy's initial encounter with him in Walgreens did not constitute a stop. *See State v. Reyes-Herrera*, 369 Or 54, 67-68, 500 P3d 1 (2021) (explaining when verbal statements will constitute a stop). The state responds that the trial court's conclusion was correct. *See State v. Backstrand*, 354 Or 392, 413-14, 313 P3d 1084 (2013) (explaining when requests for identification will not rise to the level of a stop). It argues alternatively that, even if the deputy's initial statements were sufficiently coercive to constitute a stop, the trial court's ruling can be sustained on another ground—namely, when the deputy first spoke with defendant in Walgreens, he reasonably suspected that defendant was Robert Long, who was subject to an outstanding felony warrant. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when a respondent can rely on the right-for-the-wrong reason doctrine to uphold a trial court's ruling). Defendant replies that, as a procedural matter, the state may not rely on the right-for-the-wrong-reason doctrine because the record could have developed differently if the state had argued at the suppression hearing that the initial encounter was supported by reasonable suspicion. Alternatively, defendant contends that the deputy's belief that defendant was Long was not objectively reasonable.

We need not decide the first issue that divides the parties—whether the deputy's initial encounter with defendant in Walgreens constituted a stop—to resolve this case. Even if that encounter was a stop, the deputy reasonably suspected that defendant was Robert Long, who was subject to an outstanding felony warrant. In explaining why we reach that conclusion, we begin with defendant's procedural argument that the state may not rely on the right-for-the-wrong reason doctrine because the record could have developed differently if the state had argued at the suppression hearing that the deputy reasonably suspected defendant was Long. *See id.* at 659-60 (explaining that the doctrine may be invoked when, among other things, "the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below").

In this case, the record does not show that the state took any action *before* the parties developed the evidentiary record at the suppression hearing that took the question whether the initial encounter was based on reasonable suspicion off the table. Rather, that question remained in play when the parties developed the evidentiary record. Consistently, defense counsel cross-examined the deputy on that issue.[6] To be sure, *after* the parties had developed the evidentiary record, the state did not argue that the deputy reasonably suspected that defendant was Robert Long when he initially approached him in Walgreens. However, what the state argued or did not argue after the evidentiary record had been developed could have had no effect on either defendant's incentive or opportunity to develop the record on that question.

Moreover, after the record had been developed, defense counsel continued to argue that the deputy lacked sufficient information to stop defendant when he first approached him in Walgreens and that, even if the deputy "reasonably suspected" defendant was Long when he first approached him in Walgreens, that reasonable suspicion dissipated when defendant produced identification showing he was someone else. That is, defense counsel's arguments after the record was developed suggest that she recognized that reasonable suspicion remained an issue at the suppression hearing despite the more limited justification that the state had advanced for the deputy's actions. *Cf. State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (declining to accept state's express concession that defendant had been stopped unconstitutionally). Because defendant had a full and fair opportunity to develop an evidentiary record on the reasonableness of the deputy's suspicion, we turn to the merits of that issue.

Defendant does not dispute that the deputy actually suspected that he was Long. He argues only that the deputy's

---

[6] Defense counsel questioned the deputy's opportunity to compare the two men by eliciting that defendant had driven past the deputy before the deputy was able to pull up Long's mug shot. And counsel sought to question the deputy's conclusion that defendant was Long by asking whether the deputy was aware that defendant was 13 years younger than Long. The deputy explained that he had not been aware of that fact when he concluded that defendant matched Long's mug shot.

suspicion was not objectively reasonable. *See State v. Maciel-Figueroa*, 361 Or 163, 183, 389 P3d 1121 (2017) (noting subjective and objective components of reasonable suspicion). Three facts, however, lead us to conclude that the deputy's suspicion was objectively reasonable. First, when the deputy ran the Tercel's license plate, he learned that the same car had been involved in a recent drug arrest, that a person named Robert Long either had been driving the Tercel or had been a passenger in the car when the arrest occurred, and that there was an outstanding felony warrant for Long. Second, having pulled up a mug shot of Robert Long, the deputy concluded that the mug shot of Long "matched" or "look[ed] like" the person whom he had just seen driving the Tercel. Third, when the deputy caught defendant's eye as their two cars passed, defendant accelerated quickly, sped away, parked right in front of a store once he got out of the deputy's sight, and went into the store.

Given Long's recent association with the same Tercel that defendant was driving and the deputy's observation that defendant "matched" Long's mug shot, the deputy reasonably suspected that defendant was Long. *Cf. id.* at 184 (officers reasonably suspected that the defendant was a named individual based on the defendant's gender and his geographic and temporal proximity to reported criminal activity). Defendant's evasive behavior after the deputy caught his eye added another piece to the puzzle. To be sure, evasive behavior, standing alone, is insufficient to establish a reasonable suspicion that a person has committed or is about to commit a specific crime. *Id.* at 181. However, defendant's apparent attempts to elude the deputy support the deputy's conclusion that defendant was the subject of an outstanding felony warrant. We accordingly conclude that, even if the deputy's initial encounter with defendant in Walgreens constituted a stop, the stop was justified by an objectively reasonable suspicion that defendant was a person who was subject to an outstanding felony warrant.[7] Because the trial court did not err in denying defendant's motion to suppress,

---

[7] On appeal, defendant does not dispute that, if the initial encounter in Walgreens was constitutionally valid, the deputy reasonably suspected that defendant had driven while suspended once defendant produced his state identification card.

we affirm the judgment of conviction for felony DWS and the judgment finding defendant in violation of his probation.

Affirmed.