48 February 11, 2026 No. 80

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN D. TORRES,
aka Brian David Torres-Andrade,
*Defendant-Appellant.*

Benton County Circuit Court
23CR12079; A184832

Locke A. Williams, Judge.

Submitted December 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erik Blumenthal, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of fourth-degree assault constituting domestic violence based on an incident in which he punched his girlfriend, T, in the face and broke her nose. The sentencing court ordered defendant to pay $2,598.26 in restitution for medical expenses paid on T's behalf. On appeal, defendant challenges the restitution order, questioning whether evidence that T had surgery for a nasal fracture coupled with insurance information offered at the restitution hearing was "sufficient to establish [that] the bill reflected reasonable medical expenses that the victim necessarily incurred as a result of the defendant's criminal activities." As explained below, we affirm.

We review restitution orders for legal error and are bound by the sentencing court's factual findings so long as they are supported by any evidence in the record. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016). We state the facts accordingly.

Defendant assaulted T on March 13, 2023. The next day, T went to Good Samaritan Regional Medical Center, where she received medical treatment for "fracture of nasal bones, initial encounter for closed fracture," and "unspecified injury of head, initial encounter." That visit resulted in a total of $5,292 in charges from the hospital itself, the emergency room doctor, and a radiologist. The radiology items were identified as relating to the "unspecified injury of head" and "unspecified intracranial injury with loss of consciousness of unspecified duration."

A week later, on March 20, 2023, T met with Dr. Light at the Corvallis Clinic regarding an "acquired deformity of nose, deviated nasal septum, fracture of nasal bones, initial encounter for closed fracture, mouth breathing." Light billed $557 for that visit. On March 22, 2023, the clinic's laboratory billed $140 for unspecified services relating to "fracture of nasal bones." On March 24, 2023, T underwent closed reduction nasal fracture surgery at the Corvallis Clinic Surgery Center, resulting in a total of $4,683 in charges from the surgery center, Light, and an anesthesiologist.

Altogether, adding up the above amounts, a total of $10,672 was billed for T's medical care relating to her broken nose and head injury.

T has medical insurance through InterCommunity Health Network CCO (the CCO). Fullen, who handles subrogation for the CCO, testified at the restitution hearing, and the spreadsheet that she prepared relating to T's medical expenses (which is the source of much of the above information) was admitted into evidence. Fullen testified that the CCO pays reduced rates to contracted providers and that, in this case, it paid a total of $2,598.26 to T's providers to resolve the $10,672 of bills for T's medical care. Fullen explained that the spreadsheet is an industry-standard document that is accepted and used by insurance companies; that the diagnostic codes and descriptions are standardized and reflect the reasons for an encounter; that the codes are used "industry wide" to communicate to insurance companies; and that it would be fraud for a medical provider to bill for a procedure that was not performed. Fullen further testified that, based on her experience, the billing rates charged for T's services were reasonable and typical for Oregon, as were the contractual reductions.

Based on the foregoing evidence, the sentencing court ordered defendant to pay $2,598.26 in restitution for T's medical expenses. The court acknowledged the lack of detail as to the exact services provided, but it found that all the services related to T's injuries from the assault, noting the dates of service and the many references to T's nasal fracture. The court relied on Fullen's testimony as establishing the reasonableness of both the amounts billed and the substantially lower amounts paid.

Defendant assigns error to the restitution order. He describes the question presented as whether the evidence was "sufficient to establish [that] the bill reflected reasonable medical expenses that the victim necessarily incurred as a result of the defendant's criminal activities." His specific argument pertains only to reasonableness, however, as distinct from necessity or causation. Defendant argues that "[e]vidence that an insurance company paid a medical bill is not sufficient to establish that the costs are reasonable; the

state must present evidence to show that the requested restitution corresponds to relevant market rates for necessary treatment." Here, defendant contends, "the state presented evidence that defendant's conduct required the victim to obtain surgery and that the victim's insurance company paid money to medical providers on the victim's behalf" that "reflected a standard amount that they would send to lawyers and other insurance companies," but he argues that such evidence was insufficient to support the restitution order because "the bill did not explain what services the providers performed and [provided] little means to determine whether they were all reasonable costs that arose from defendant's criminal activities."

In response, the state argues primarily that defendant's claim of error is foreclosed by ORS 137.106(1)(c), a statutory provision relating to restitution proceedings that was enacted in 2022 and that creates a presumption of reasonableness for certain documented expenses.[1] The state secondarily argues that the evidence presented at the restitution hearing was sufficient to prove reasonableness in any event. We note that the statutory presumption argument is essentially an alternative basis to affirm, although the state does not describe it as such. No one mentioned the statutory presumption below, and, indeed, the sentencing court's statements during the restitution hearing strongly suggest that it was unaware of the new provision. The state relies on the presumption on appeal without acknowledging that it was not the basis for the sentencing court's ruling. Meanwhile, defendant does not address the presumption at all, having not mentioned it in his opening brief and not filed a reply brief.

When a person has been convicted of a crime that resulted in "economic damages," the district attorney is required to investigate and present to the court evidence of the nature and amount of the damages. ORS 137.106(1)(a); *see also McClelland*, 278 Or App at 141 (explaining that,

---

[1] The legislature enacted the provision codified at ORS 137.106(1)(c) in 2022, and it went into effect on January 1, 2023. Or Laws 2022, ch 57, § 1. Defendant's restitution hearing took place in June 2024. ORS 137.106 has since been amended, *see* Or Laws 2025, ch 360, § 3, in ways immaterial to the state's argument on appeal. All references herein are therefore to the current version of the statute.

as to restitution, the state must prove (1) criminal activity, (2) economic damages, and (3) a causal relationship between the two). "If the defendant objects to the imposition, amount or distribution of the restitution, the court shall allow the defendant to be heard on such issue at the time of sentencing or at the time the court determines the amount of restitution." ORS 137.106(6). Ultimately, "[i]f the court finds from the evidence presented that a victim suffered economic damages, *** the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(2)(a).

"Economic damages" include "reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services." ORS 31.705(2)(a). "A medical charge is reasonable if it is at (or below) the market rate for the services, drugs, or other medical items provided[.]" *State v. Workman*, 300 Or App 622, 623, 455 P3d 566 (2019). Under the restitution statutes in effect before 2023, "[t]he payment of medical bills by an insurer, without more, [was] not legally sufficient evidence that the payment was at or below the market rate and, therefore, reasonable." *State v. Gastiaburu*, 318 Or App 454, 458, 508 P3d 592 (2022); *see also, e.g., State v. Bright*, 333 Or App 58, 62, 551 P3d 400 (2024), *rev den*, 373 Or 280 (2025) ("[T]o prove that a cost is reasonable, the state must offer some evidence beyond just evidence of payment itself."); *McClelland*, 278 Or App at 144 ("Some additional testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services."). However, in 2022, the legislature amended the restitution statutes to create a statutory presumption of reasonableness for certain documented expenses:

> "At a restitution proceeding, economic damages will be presumed reasonable if the damages are documented in the form of a record, bill, estimate, or invoice from a business, health care entity or provider or public body as defined in ORS 174.109."

ORS 137.106(1)(c); *see* Or Laws 2022, ch 57, § 1.

Although ORS 137.106(1)(c) is obviously relevant, we are reluctant to construe and apply it to decide this appeal, because the record strongly suggests that the sentencing court did not apply the presumption, and the state has not addressed the requirements for us to consider an alternative basis to affirm.[2] We therefore instead decide the appeal on the same basis as the sentencing court ruled, which is the subject of the state's secondary argument. That is, we agree that the evidence presented at the restitution hearing—specifically Fullen's testimony and spreadsheet—was sufficient to prove the reasonableness of the charges and the amounts paid, even without the benefit of the statutory presumption. We therefore affirm the judgment ordering defendant to pay $2,598.26 in restitution.

Affirmed.

---

[2] A party may argue that a trial court was "right for the wrong reason," thus proposing an alternative basis to affirm a ruling. *Outdoor Media Dimensions Inc. v. State*, 331 Or 634, 659, 20 P3d 180 (2001). However, limitations apply when the proposed alternative basis to affirm was not raised below. *Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022).